# EXHIBIT C

AMENDMENT NO. 3
TO THE RULES AND REGULATIONS
PROVIDING HEALTH AND WELFARE BENEFITS
FOR ACTIVE BOILERMAKERS COVERED UNDER
PLAN M

**(As Stated January 1, 1998)**

Effective July 1, 2000, the Rules and Regulations are amended as follows:

1.   Article X, Section 3 is restated to read:

Section 3.  Subrogation Provision.  If the Fund pays benefits on behalf of any Eligible Individual, for injury or illness, for which the Eligible Individual receives compensation of any kind, whether by judgment, compromise, settlement or otherwise, the Fund shall be subrogated to the extent of its benefits paid (including any amounts credited to deductibles) to the Eligible Individual's recovery of compensation for his damages (alleged and/or suffered and/or otherwise) from any person, and/or insurance or other benefits carrier and/or any other organization.  Damages shall include, but shall not be limited to, compensation received and/or claimed for personal injury and/or property loss and/or medical expenses.  The Fund's subrogation rights shall not be diminished, restricted or in any way eliminated in the event that an Eligible Individual recovers or has the right to recover no-fault insurance benefits. The Fund's subrogation rights shall also not be in any way diminished or negated by state statutory or case law and/or state administrative regulations.

The Fund shall pay benefits only on the condition that the Eligible Individual or another duly authorized person on his behalf shall:

(a)   Reimburse the Fund to the extent of benefits provided by the Fund (including any amounts credited to deductibles), immediately upon receipt of compensation of any kind, whether by judgement, compromise, settlement or otherwise, for damages which include, but are not limited to, personal injury, property loss or medical expenses whether or not such compensation is sufficient to make the Eligible Individual whole.  The Eligible Individual's heirs, beneficiaries and personal representatives shall likewise be bound by this obligation.

(b)   Provide the Fund a lien to the extent of benefits provided by the Fund (including any amounts credited to deductibles), in the compensation for damages recovered, or to be recovered, by the Eligible Individual, or by his heirs, beneficiaries or personal representatives in case of his death, on account of his injury or illness.

(c)   Execute and deliver instruments and papers to the Fund and do whatever else is necessary to secure the Fund's rights including:

1.   To immediately notify the Fund in writing whenever the Eligible Individual believes or first learns that any person, insurance or benefits carrier, or any other organization, is or may be responsible, or has agreed or may agree to pay, either wholly or in part, for any damages, the Eligible Individual has incurred or may incur as a result of any illness or injury. Damages shall include, but are not limited to, any personal injury and/or property damage and/or medical expenses.

2.   To immediately notify the Fund in writing, whenever a representative of any other person, insurance or benefits carrier, or any other organization, contacts the Eligible Individual or his representative or is contacted by the Eligible Individual or by his representative, in order to settle, adjust or in any way resolve the Eligible Individual's or his estate's claim for damages.  A claim shall include any cause of action filed in any court and/or any verbal or written demand made by an Eligible Individual or on his behalf, for compensation for damages the Eligible Individual has incurred or may incur as a result of any illness or injury.

3.   To refuse any settlement, adjustment or resolution of the Eligible Individual's or his estate's claim for damages until the Eligible Individual or his representative has received the Fund's written authorization allowing him or his representative to accept a settlement, adjustment or resolution offered by any person, insurance or benefits carrier, or any other organization.

(d)   The Fund's benefits shall be secondary to any no-fault insurance benefits paid or payable to the Eligible Individual or his estate as a result of any illness or injury.

(e)   The Fund is not responsible for any costs or expenses, including attorney's fees, incurred by an Eligible Individual or on his behalf, in connection with any efforts to recover monies from any person, and/or insurance or other benefits carrier and/or any other organization, unless the Fund agrees in writing to pay a portion of those expenses.

(f)   The characterization of any amounts paid to or on behalf of an Eligible Individual, whether under a settlement agreement or otherwise, do not affect the Fund's right to subrogation and to claim, pursuant to such right, all or a portion of such payment.

(g)   In the event of recovery of its subrogation lien, the Fund's costs of collection including its attorney's fees shall be deducted first. The Fund's subrogated interest in benefits paid (including all amounts credited to deductibles) shall be deducted next.  The remainder shall be paid to the Eligible Individual or his representative or estate.

The Fund reserves its right to exercise judgment as to each individual case based upon a review of the facts of that case and the application of this section.

## ARTICLE XII. GENERAL PROVISIONS

Section 1. All benefits will be paid by the Fund to the Employee as they accrue upon receipt of written proof, satisfactory to the Fund, covering the occurrence, character, and extent of the event for which the claim is made.

Section 2. Benefits payable hereunder shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge by any person, however, any Employee may direct that benefits due him be paid to an institution in which he or his Dependent is hospitalized or to any provider of medical or dental services or supplies in consideration for medical, hospital or dental services rendered or to be rendered.

Section 3. Benefits will be paid by the Fund only if notice of claim is made within two years from the date on which covered expenses were first incurred.

Section 4. In the event the Fund determines that the Employee is incompetent or incapable of executing a valid receipt or assignment and no guardian has been appointed, or in the event the Employee has not provided the Fund with an address at which he can be located for payment, the Fund may, during the lifetime of the Employee, pay any amount otherwise payable to the Employee, to the husband or wife or relative by blood of the Employee, or to any other person or institution determined by the Fund to be equitably entitled thereto; or in the case of the death of the Employee before all amounts payable under Articles II through IX have been paid, the Fund may pay any such amounts to any person or institution determined by the Fund to be equitably entitled thereto. The remainder of such amount shall be paid to one or more of the following surviving relatives of the Employee: lawful spouse, child or children, mother, father, brothers or

sisters, or to the Employee's estate, as the Board of Trustees in its sole and absolute discretion may designate. Any payment in accordance with this provision shall discharge the obligation of the Fund hereunder to the extent of such payment.

Section 5.

(a)   No Employee, Dependent, Pensioner, beneficiary or other person shall have any right or claim to benefits under the Plan, or any right or claim to payments from the Fund, other than as specified herein. Any dispute as to eligibility, type, amount or duration of such benefits or any right or claim to payment from the Fund shall be resolved by the Board of Trustees or its Agent under and pursuant to the Plan, and its decision of the dispute, right or claim shall be final and binding upon all parties thereto. No action may be brought for benefits under the Fund or the Plan or to enforce any rights hereunder until after the claim therefore has been submitted to and determined by the Trustees or its Agent, and only subject to such judicial review as may be required by applicable law. The term "Agent" as used herein means any insurance company, insurance service or similar organization selected by the Board of Trustees to pay the benefits provided by the Fund or the Plan.

(b)   Any person whose application for benefits under the Plan has been denied in whole or in part, or whose claim to benefits against the Fund is otherwise denied, shall be notified in writing of such denial within 90 days after receipt of such application or claim. An extension of time not exceeding 90 days may be required by special circumstances. If so, notice of such extension, indicating what special circumstances exist therefore and the date by which a final decision is expected to be rendered, shall be furnished the claimant prior to the expiration of the initial 90 day period. The notice shall set forth in a manner calculated to be understood by

- 68 -

the claimant (1) the specific reason or reasons for the denial; (2) specific reference to pertinent Plan provisions on which the denial is based; (3) a description of any additional material or information necessary to perfect the claim, and an explanation of why such material or information is necessary; and (4) appropriate information as to the steps to be taken if the claimant wants to submit his or her claim for review.

(c)     Any such person may petition the Board of Trustees for review of the denial.  A petition for review shall be in writing, shall state in clear and concise terms the reason or reasons for disputing the denial, shall be accompanied by any pertinent documentary material not already furnished to the Fund, and shall be filed by the petitioner or his duly authorized representative with or received by the Administrative Office, or the office of the Agent, within 180 days after the petitioner received notice of the denial.  The petitioner or his duly authorized representative shall be permitted to review pertinent documents and submit issues and comments in writing.

(d)     Upon good cause shown, the Board of Trustees, or its Agent, shall permit the petition to be amended or supplemented and shall grant a hearing on the petition before a Committee appointed by the Board of Trustees to act on such petitions, to receive and hear any evidence or argument which cannot be presented satisfactorily by correspondence.  The petitioner's expenses for participation and attendance at the hearing will be borne by him or her.

The time and place of the hearing will be determined by the Board or Committee.  The failure to file a petition for review within such 180 day period, or the failure to appear and participate in any such hearing, shall constitute a waiver

of the claimant's right to review of the denial, provided that the Board of Trustees may relieve a claimant of any such waiver for good cause if application for such relief is made within one year after the date shown on the notice of denial.

(e)     A decision by the Committee or Agent shall be made promptly and not more than 60 days after receipt of the petition for review, unless special circumstances require an extension of time for processing, in which case notice of such extension shall be furnished to the claimant prior to the expiration of the initial 60 day period.  A decision shall be rendered as soon as possible, but not later than 120 days after receipt of the petition for review.  The petitioner shall be advised of the decision of the Committee or Agent, in writing.  The decision shall include specific reasons for the decision, written in a manner calculated to be understood by the petitioner, and specific references if appropriate, to the pertinent Plan provisions on which the decision is based.

(f)     The decision of the Board with respect to petition for review including a decision resulting from a waiver of the claimant's right to review as provided in Section 5(d) of this Article XII, shall be final and binding upon all parties, including the applicant, claimant or petitioner, subject only to judicial review as provided in Subsection (a).  The provisions of this Section shall apply to and include any and every claim to benefits from the Fund, and any claim or right asserted under the Plan or against the Fund, regardless of the basis asserted for the claim, and regardless of when the act or omission upon which the claim is based occurred, and regardless of whether or not the claimant is a "participant" or "beneficiary" of the Plan within the meaning of those terms as defined in ERISA.

In performing its review of any claim, the Board of Trustees is expressly authorized to exercise its unrestricted discretion to decide claims on a case-by-case basis and to make all factual determinations in connection with its decisions and to interpret any provision of the Plan, its Rules and Regulations, and the Plan booklet, the Trust Agreement, and any other documentation relating to the Plan or the claim.

Section 6. The Fund, at its own expense, shall have the right and opportunity to examine the person of any Eligible Individual when and so often as it may reasonably require during the pendency of any claim, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law. Proof of claim forms, as well as other forms, and methods of administration and procedure, will be solely determined by the Fund.

Section 7. The benefits provided by this Fund are not in lieu of and do not affect any requirement for coverage by Workers' Compensation Insurance laws or similar legislation.

Section 8. The provisions of these Rules and Regulations are subject to and controlled by the provisions of the Trust Agreement, and in the event of any conflict between the provisions of these Rules and Regulations and the provisions of the Trust Agreement, the provisions of the Trust Agreement shall prevail.

Section 9. The Fund reserves the right to recover any overpayments of benefits through any legal or equitable means, including offsetting benefit payments for any Eligible Individual.

Section 10. Employees are responsible for notifying the applicable Contributing Employer of any change in the status of eligible Dependents, including divorce. Any

benefit payments made on behalf of an ineligible dependent will be the responsibility of the Employee if the Employee failed to notify the Contributing Employer in writing.

Section 11. In the event an Eligible Individual's status under the Fund changes either from an Employee to a Dependent, or from a Dependent to an Employee, such person will not be eligible for new benefit maximums under the Plan.

In the event an Eligible Individual's status under the Fund changes from an Employee or a Dependent of an Employee to a Retired Employee or a Dependent of a Retired Employee, and back again to an Employee or Dependent of an Active Employee, such Eligible Individual will not be eligible for new lifetime maximum benefits under Articles II and IV.

In the event an Eligible Individual's status under the Fund changes either from an Employee or Dependent of an Employee to a Retired Employee or a Dependent of a Retired Employee or vice versa, any deductibles under the Plan to which the Eligible Individual is transferring to must be met before benefits become payable.

This Plan M shall be treated as an entirely separate benefit program from any other benefit program provided by the Fund. Specifically, any person who becomes an Eligible Individual under this Plan must meet any applicable deductibles under this Plan before benefits become payable, regardless of whether or not such Eligible Individual was covered under another benefit program provided by the Fund. Further, any benefit maximums set forth in this Plan are separate and apart from any benefit maximums set forth in any other benefit programs provided by the Fund.

Section 12. Coordination of Benefits with Other Plans Provided by the Fund. In the event an Eligible Individual under this Plan is also an Eligible Individual under another

Plan provided by the Fund, benefits of this Plan will be coordinated with those of the other Plan in accordance with Article XI.

Section 13.  Any person claiming benefits under the Plan shall furnish to the Plan such information as the Board of Trustees may find necessary to assist them to determine the applicability and implementation of the Plan.