## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| TIMOTHY STEELE and | : | NO.  2:09-cv-02837-PBT |
| JUDITH STEELE, h/w | : | |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| BLAKE & UHLIG, P.A.; | : | |
| LAUREN FLETCHER; and | : | |
| BOILERMAKERS NATIONAL | : | |
| HEALTH AND WELFARE FUND, | : | |
| *Defendants* | : | |
| | : | |

### CORRECTED MEMORANDUM OF LAW IN SUPPORT OF
### MOTION OF DEFENDANTS BLAKE & UHLIG, P.A. AND LAUREN FLETCHER
### TO DISMISS PLAINTIFFS' COMPLAINT
### FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED
### OR, IN THE ALTERNATIVE, TO TRANSFER THE CASE

*Statutory citations added to pages 12 and 13 and*
*four words added to page 25 to correct a drafting error.*

**MARGOLIS EDELSTEIN**

By:    JAMES R. KAHN, ESQUIRE
         PA I.D. no. 29127
         *jkahn@margolisedelstein.com*

The Curtis Center
170 S. Independence Mall W., Suite 400E
Philadelphia, PA 19106-3337
Tel: (215) 922-1100

Attorneys for Defendants Blake & Uhlig, P.A. and
Lauren Fletcher

Dated: August 3, 2009

# TABLE OF CONTENTS

I.   STATEMENT OF FACTS ALLEGED IN THE COMPLAINT OR OTHERWISE PART OF UNDISPUTED PROCEDURAL BACKGROUND OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   A.   This Honorable Court must dismiss the Steeles' claim against Moving Defendants for failure to state a cause of action for three distinct reasons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       1.   This Honorable Court must dismiss the Steeles' claim against Moving Defendants under the FDCPA because a reimbursement obligation pursuant to an employee benefit plan is not a "debt" under the statute. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       2.   In the alternative, the Steeles' claim under the FDCPA must be dismissed because neither Blake & Uhlig nor Ms. Fletcher were "debt collectors" under the statute. . . . . . . . . . . . . . . . . . . . 9

       3.   In the further alternative, the Steeles' claims under the FDCPA are baseless and must be dismissed because ERISA preempts the anti-subrogation provision of Pennsylvania's MCARE Act. . . . . . 10

           a.   The Steeles' claim are entirely based on the assumption that the reimbursement claim asserted by Moving Defendants was invalid, but that assumption is wrong. . . 10

           b.   The Supreme Court held in the *FMC Corp.* case that ERISA validly preempts Pennsylvania anti-subrogation law for self-funded ERISA plans. . . . . . . . . . . . . . . . 12

           c.   The *FMC Corp.* decision applies to preempt the MCARE Act's anti-subrogation provision on which the Steeles erroneously rely. . . . . . . . . . . . . . . . . . . . . . . . . . 15

           d.   The decisions in the medical malpractice case cited by the Steeles, including one preventing the Steeles from recovering medical costs, are irrelevant because the Boilermakers' right of reimbursement is from *any* recovery obtained by the Steeles. . . . . . . . . . . . . . . . 18

**B.**     **In the alternative, this Action should be transferred to the United States District Court for the District of Kansas pursuant to 28 U.S.C. §1404(a).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    **1.**     **A transfer would forestall the need for the Motion to Dismiss to be decided here and allow similar issues in both courts to be decided together.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    **2.**     **The District Court in Kansas has jurisdiction and venue to hear this matter.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    **3.**     **The first-filed rule mandates that this matter be heard in Kansas with the earlier filed matter already there.** . . . . . . . . . . . . . . . 21

    **4.**     **This matter should also be transferred for the convenience of the witnesses.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**III.**     **CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I.   **STATEMENT OF FACTS ALLEGED IN THE COMPLAINT OR OTHERWISE PART OF UNDISPUTED PROCEDURAL BACKGROUND OF THE CASE**

The instant case concerns medical benefits which Plaintiff Judith Steele collected from Co-Defendant Boilermakers National Health and Welfare Trust ("the Fund") which the Fund seeks to recover from proceeds obtained by Mrs. Steele in a medical malpractice lawsuit.  A true and correct copy of the Steeles' Complaint is appended as Exhibit A.

Moving Defendant Blake & Uhlig, P.A. is a law firm in Kansas City, Kansas and Moving Defendant Lauren Fletcher is an attorney who works for Blake & Uhlig.  Ex. A, ¶¶ 5, 6.  Co-Defendant Boilermakers National Health and Welfare Fund is an self-funded employee benefit plan with a principal place of business in Kansas City, Kansas.  Ex. A, ¶ 7.

The Fund pays benefits to union members under the Boilermakers National Health and Welfare Plan (the "Plan"), a self-funded multi-employer group welfare benefit plan governed by the Employee Retirement Income Security Act ("ERISA").  Ex. A, ¶ 7; Unsworn Decl. of Lauren Fletcher, at ¶5.  This Declaration is appended as Ex. B. The terms of the Plan include a reimbursement provision.  A true and correct copy of the pertinent pages of the relevant Plan Amendment, dated Jan. 1., 1998, are appended as Ex. C.  Article X, Section 3 of the Plan entitled General Limitations and Exclusions reads as follows:

> The funds shall pay benefits only on the condition that the Eligible Individual or another duly authorized person on his behalf shall:
>
> (a)   *Reimburse the Fund to the extent of benefits provided* by the Fund (including any amounts credited to deductibles), *immediately upon receipt of compensation of any kind, whether by judgment, compromise, settlement or otherwise, for damages which include, but are not limited to, personal injury, property loss or medical expenses whether or not such compensation is sufficient to make the Eligible Individuals whole.*
>
> (b)   Provide the Fund a lien to the extent of benefits provided by the Fund (including any amounts credited to deductibles), in the compensation for

> damages recovered, or to be recovered, by the Eligible Individual, or by his
> heirs, beneficiaries or personal representatives in case of his death, on
> account of his injury or illness.

Ex. C, 1 (emphasis added).  The Fund paid $530,452.50 for Ms. Steele's medical expenses.  Ex.

A, ¶ 8.

On November 6, 2006 Mrs. Steele and Plaintiff Timothy Steele, her husband, filed a

medical malpractice lawsuit against a number of medical providers in the Philadelphia County

Court of Common Pleas to recover for Ms. Steele's injuries.   Ex. A, ¶ 10.  A true and correct

copy of the medical malpractice action Complaint is appended as Ex. D.  Subsequently, at some

point before trial of the medical malpractice action, the Steeles entered into settlement agreements

with all of the defendants in that case under which they were provided with a substantial sum of

money.[1]  The settlement proceeds are believed to well exceed the amount of medical expenses paid

by the Fund.

As the medical expenses reimbursed by the Fund were related to the medical procedures

at issue in the medical malpractice action, the Fund sought to enforce its right to reimbursement

under the terms of the Plan  for the monies it had paid for Ms. Steele's medical care.  Ex. A, ¶

13.  The Steeles acknowledged that they have refused to reimburse the Fund for the monies it paid

despite obligations under the Plan.  Ex. A, ¶ 15.  The reason for the Steeles' refusal is they were

not reimbursed for their medical expenses as part of the lawsuit or settlement.  (As demonstrated

---

[1] This allegation is included within the Motion to Dismiss filed by the Steeles in the Kansas Action which is discussed in greater detail below.  Defs.' Mot. to Dismiss, ¶ 3.  A true and correct copy of the Motion to Dismiss the Kansas Action is appended as Ex. E.

below, that is irrelevant as the Plan's right of reimbursement plainly exists regardless of the kind of compensation.)

Given Plaintiffs' refusal to meet their obligations under the Plan, on June 18, 2009, the Fund filed a two-count civil action Complaint against the Steeles along with their attorneys who were holding the funds, in the United States District Court for the District of Kansas (the "Kansas Action") which was docketed at 2:09-cv-02329-JAR-DJW.  A true and correct copy of the Complaint filed in the Kansas Action is appended as Ex. F.[2]

On July 20, 2009 the Defendants in the Kansas Action filed a Motion to Dismiss the Fund's claims for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.  Ex. E.  In the alternative the Defendants sought to transfer the Kansas Action to this Court under 28 U.S.C. § 1404(a).  The Defendants' motion to dismiss or transfer the Kansas Action is currently pending.

On June 24, 2009, after the Fund commenced the Kansas Action, but before the Motion to Dismiss was filed in that case, the Steeles filed the instant civil action (the instant or "Pennsylvania Action").  In this case, the Steeles have asserted a claim against Blake & Uhlig and Ms. Fletcher for allegedly violating the Fair Debt Collection Practices Act ("FDCPA").  Specifically, Plaintiffs allege in the Complaint that both Blake & Uhlig and Ms. Fletcher violated

---

[2] The Fund filed the Kansas Action to enforce the terms of the Plan pursuant to ERISA, 29 U.S.C. §§ 1001, *et seq.*  Jurisdiction over the Kansas Action in United States District Court for the District of Kansas is based on 29 U.S.C. §§1132(e)(2) and 28 U.S.C. § 1331, while venue is pursuant to 29 U.S.C. § 1132(e)(2).

the FDCPA when they sought reimbursement on the Fund's behalf for the medical bills paid on

Ms. Steele's behalf.  Ex. A., ¶¶ 26-31.[3]

Defendants now move this Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs'

Complaint against them for failure to state a claim upon which relief can be granted or, in the

alternative, to transfer this Pennsylvania Action to the United States District Court for the District

of Kansas pursuant to 28 U.S.C. §1404(a).

## II.   ARGUMENT

### A.   This Honorable Court must dismiss the Steeles' claim against Moving Defendants for failure to state a cause of action for three distinct reasons

This Court should dismiss the Steeles' Complaint for three distinct reasons based on the

facts as alleged by the Steeles and an appropriate interpretation of the applicable law.[4]  First, the

Steeles' reimbursement obligation under the Plan is not a "debt" under the terms of the FDCPA.

Second, Moving Defendants Blake & Uhlig and Ms. Fletcher are not "debt collectors" under the

---

[3] Plaintiffs' claims against the Fund  are based on alleged violations of the Pennsylvania Fair Credit Extension Uniformity Act, and the Pennsylvania Unfair Trade Practice and Consumer Protection Law. Ex. A, ¶¶ 32-38.  This Motion does not address the lack of validity of the Plaintiffs' state law claim against the Fund, which that Defendant will address in its own Motion to Dismiss.

[4] The court should grant a Rule 12(b)(6) motion "if it appears to a certainty that no relief could be granted under any set of facts which could be prove[n]" *D.P. Enter., Inc. v. Bucks County Cmty. Coll.*, 725 F.2d 943, 944 (3d Cir. 1984).  A complaint challenged by a Rule 12(b)(6) motion is not required to contain detailed factual allegations, but "plaintiffs' obligation to state the grounds of entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  "A court may also consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, such as a document that is integral to or explicitly relied upon in the complaint and an undisputably authentic document...." *Silberman & Difilippo, P.C. v. Westport Ins. Co.*, 2008 WL 725963, at *2 (E.D. Pa. 2008) (internal citations omitted).  In any event, to the extent that this Court must rely on undisputed procedural facts in the record, then, pursuant to Fed. R. Civ. P. 12(d), this motion may be decided as one for summary judgment under Fed. R. Civ. P. 56.

FDCPA.  Third, ERISA preempts the anti-subrogation provision of Pennsylvania's MCARE Act

upon which the Steeles rely, and therefore Moving Defendants' collection actions were proper.

Each of these points is addressed seriatim.

> **1.    This Honorable Court must dismiss the Steeles' claim against Moving Defendants under the FDCPA because a reimbursement obligation pursuant to an employee benefit plan is not a "debt" under the statute.**

Moving Defendants actions were proper, because a reimbursement obligation pursuant to

an employee benefit plan is not a "debt" under the statute.  The FDCPA is a federal statute that

provides a judicial remedy to consumers subjected to abusive, deceptive or unfair debt collection

practices by debt collectors.  *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir.

2000).  A threshold requirement to assert a claim under "the FDCPA is that the prohibited

practices are used in an attempt to collect a 'debt.'"[5] *Piper v. Portnoff Law Assoc., Ltd.*, 396 F.3d

227, 232 (3d Cir. 2005) (internal citations omitted).  "In other words, if there is no debt, the

FDCPA does not govern the collection practices."  *Krevsky v. Equifax Check Serv., Inc.*, 85 F.

Supp. 2d 479, 480 (M.D. Pa. 2000).

In a case directly on point with the instant situation, *Garner v. Augustine, Kern & Levens,*

*Ltd.*, 1994 WL 48589 (N.D. Ill. 1994), the court held that a reimbursement obligation to a self-

funded employee benefit plan governed by ERISA was not a "debt" under the FDCPA.  In *Garner*

the employee benefit plan paid benefits for the medical care for the daughter of a plan participant.

The plan then sought to determine if it was entitled to reimbursement pursuant to an express

---

[5] Debt" is statutorily defined under the FDCPA as "any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

provision within the plan which granted it this right where the participant obtained a recovery from third parties. *Id.* at *1. After the participant refused to disclose whether he had obtained any such recovery, the plan filed suit to determine if it had a viable reimbursement claim. After the plan concluded it in fact did not have a reimbursement right, the participant filed a lawsuit against the lawyers who represented the plan based, in part, on their alleged violation of the FDCPA. *Id.*

The Court dismissed the participant's civil clam under the FDCPA for failure to state a cause of action, first noting that under the FDCPA "[d]ebt is not used . . . in its broadest possible sense of any amount that may be owed by A to B arising from any set of facts." *Id.* at *2. The court held that under the plain meaning of the FDCPA, the debt must arise from a transaction where a consumer "entered into an agreement to purchase property or services or insurance (or to . . . borrow money) for personal or family or household purposes, then failed to pay for the purchased items." *Ibid.*, *citing* 15 U.S.C. §1692a(5). In the context of insurance, the FDCP is "aimed at a consumer who contracts for insurance coverage and then does not pay the premium."

Given the limitations of the FDCPA, the court expressly concluded "that the statute is not intended to cover the situation … where an employee or his beneficiary under an employee benefit plan has received benefits that may give rise to a reimbursement obligation under that plan…." Ibid. The court further reasoned that a reimbursement claim by an employee benefit plan falls outside the FDCPA because the plan is not seeking to recover for "any nonpayment of the 'price' that the employee … agreed to 'pay' for that 'purchase.'" *Id.* at *2 n.5. Accordingly, the court

held that the FDCPA was inapplicable to the employee benefit plan's underlying reimbursement claim because the plan was not seeking to collect a "debt" in that case.  *Id.* at *3.[6]

The Third Circuit has never specifically decided whether a reimbursement obligation under an employee benefit plan is a "debt," but in similar cases the court has held there was not a "debt" under the statute.  *Pollice*, 225 F.3d at 401; *Staub v. Harris*, 626 F.2d 275, 276-279 (3d Cir. 1980).  In *Pollice* the Court of Appeals noted that "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value," and  concluded that a property tax owed by a home owner was not a "debt" under the FDCPA  because it did not arise from the purchase of property, but rather from "the fact of ownership."  *Id.* at 401-02.  The opinion cited the earlier decision by the Court of Appeals in *Staub*, which had held that the "relationship between taxpayer and taxing authority does not encompass the type of pro tanto exchange which the statutory definition [of 'debt'] envisages." 626 F.2d at 278.

The relation of these Third Circuit Court of Appeals cases to the specific issue at hand was precisely demonstrated by the dissenting opinion in the Fifth Circuit's *Hamilton* decision

---

[6] The Fifth Circuit Court of Appeals in *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385 (5th Cir. 2002), in a 2-1 decision, expressly rejected *Garner* and concluded a reimbursement obligation under an employee benefit plan is subject to the FDCPA, reversing the lower court's decision finding that no "debt" was involved.  However, *Hamilton*, which involved a benefit plan funded by a separate third-party insurance carrier that was the actual beneficiary of the reimbursement claim, is specifically distinguishable from both the instant case and *Garner*, which both involve self-insured employee benefit plans.  Self-insured plans are the specific target of ERISA's protections and covered by its "deemer" provision -- and thus not subject to ERISA's "savings" provision that protect only plans insured by third parties which may be treated differently.  *See* discussion in Section II.A.3. below regarding the Supreme Court's holding on this point in *FMC Corp. v. Holliday*, 498 U.S. 52, 55-65 (1990).  Furthermore, as discussed below in Section II.A.2., after remand and re-appeal the Fifth Circuit in the *Hamilton* case ultimately upheld the lower court's second dismissal of the plaintiff's case on the ground that the defendant was not a "debt collector" subject to the FDCPA.  *Hamilton v. Trover Solutions, Inc.*, 104 Fed. Appx. 942 (5th Cir. 2004).

(discussed in n.3 *supra)*, which specifically cited *Pollice* as support for its position that a reimbursement obligation under ERISA is not a "debt." The dissenting opinion noted that the Third Circuit Court of Appeals in *Pollice* declined to interpret the "arising out of" requirement under the FDCPA's definition of a "debt" expansively enough to encompass a reimbursement obligation under an employee benefit plan. *Hamilton*, 310 F.3d at 396 (Garza, J., concurring in part and dissenting in part), *citing Pollice*, 225 F.3d at 402.

As the Third Circuit Court of Appeal's analogous decisions in *Pollice* and *Staub* support the Chicago District Court's decision in *Garner* and the dissenting opinion in *Hamilton*, this Court should also hold that an employee benefit plan's reimbursement rights does not involve a "debt" that resulted from an exchange for the rendition of services or purchase of property. Here, Mr. Steele worked for employers who had collective bargaining agreements with the Boilermakers Union and as a result obtained health care coverage for his family without paying premiums from the Boilermakers Fund under the terms of that Plan. Ex. E, at ¶ 8. The Steeles' reimbursement obligation arose from Mr. Steele's employment in union work and not from the rendition of services or purchase of property from the Union. Mr. Steele never paid the Fund for either a good or service, but instead agreed, through his willing participation in the Plan, that in exchange for the Fund paying potential future medical bills the Fund had a right to reimbursement from any monies recovered from third parties. Such a reimbursement obligation under an employee benefit plan is not a "debt" under the FDCPA because it does not arise out of the rendition of services or purchase of property. Therefore, the Steeles' claim under the FDCPA must be dismissed because the reimbursement obligation here is not a "debt" as required under the statute.

**2.     In the alternative, the Steeles' claim under the FDCPA must be dismissed because neither Blake & Uhlig nor Ms. Fletcher were "debt collectors" under the statute.**

In the alternative, and even assuming *arguendo* that the Moving Defendants were seeking to collect a "debt", the Steeles' claim under the FDCPA must still be dismissed because neither Blake & Uhlig nor Ms. Fletcher were "debt collectors" under the statute.  In order to assert a claim under the FDCPA a plaintiff must have been "subjected to abusive, deceptive or unfair debt collection practices by debt collectors." *Piper*, 396 F.3d at 232.  The FDCPA, by its terms, only applies to "debt collectors."[7]  *Pollice*, 225 F.3d at 403.  The statutory definition of a "debt collector" under the FDCPA excludes "[a]ny person collecting or attempting to collect any debt owed, due or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person...."  15 U.S.C. § 1692a(6)(F)(iii).  A debt is in default under the FDCPA at the time a party fails to pay the alleged amount owed to another when it was due, not when the obligation to pay is originally incurred.  *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 172 n.11 (3d Cir. 2007); *Hamilton v. Trover Solutions, Inc.*, 2003 WL 21105100, at *3 (E.D. La. 2003), *aff'd,* 104 Fed. Appx. 942 (5th Cir. 2004).

The statutory exception within §1692a(6)(F)(iii) applies to parties who either purchase a debt prior to default *and* to those responsible for the collection of a debt owed to another before

---

[7] A "debt collector" is defined under the FDCPA, 15 U.S.C. §1692a(6), as follows:

The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

default.  *Kvassay v. Hasty*, 236 F. Supp. 2d 1240, 1270 (D. Kan. 2002); *Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 254 (S.D.N.Y. 1998).

As alleged in the Steeles' Complaint, Moving Defendants Blake & Uhlig and Ms. Fletcher first became responsible for obtaining the potential reimbursement the Steeles owed to the Fund on or before December 3, 2008.  Ex. A, ¶¶ 8, 13.  This was when Moving Defendants did first "obtain" responsibility over potential reimbursement obligations which later ripened into what the Steeles claim is a "debt".  Thus, Moving Defendants obtained the debt before the Steeles' reached settlements in their medical malpractice lawsuit in 2009.  The Steeles could not have defaulted on their reimbursement obligation to the Fund until the settlements, since, under the express terms of the Plan, the Steeles' reimbursement obligation was not triggered until they received compensation in the malpractice lawsuit.  Plaintiffs did not default on their reimbursement obligation, the alleged "debt" in this case, until they first refused to reimburse the Fund after receiving compensation in 2009.  Accordingly, the debt was not in default when Moving Defendants obtained it.

As Blake & Uhlig and Ms. Fletcher fall squarely within the exception under §1692a(6)(F)(iii) of the FDCPA, neither party is a "debt collector" subject to the statute.  Thus, the FDCPA is inapplicable to Moving Defendants' collection efforts on the Fund's behalf and the Steeles' claim under the FDCPA must be dismissed for this reason as well.

     **3.**    **In the further alternative, the Steeles' claims under the FDCPA are baseless and must be dismissed because ERISA preempts the anti-subrogation provision of Pennsylvania's MCARE Act.**

        **a.**    **The Steeles' claim are entirely based on the assumption that the reimbursement claim asserted by Moving Defendants was invalid, but that assumption is wrong.**

In the further alternative, and even assuming *arguendo* that this situation involves "debt collectors" collecting a "debt", the Steeles' claims under the FDCPA are still baseless and must be dismissed for failure to state a claim upon which relief can be granted because ERISA preempts the anti-subrogation provision of Pennsylvania's Medical Care Availability and Reduction of Error ("MCARE") Act.  The entire foundation of the Steeles' claim against Moving Defendants under the FDCPA is their contention that Moving Defendants' attempt to seek reimbursement on the Fund's behalf is baseless because the anti-subrogation provision in the MCARE Act allegedly prohibits the Fund from exercising its reimbursement rights under the Plan. Ex. A, ¶ 10.[8]  If the Steeles' premise in this regard is wrong, then their claim fails entirely.

---

[8]  The Steeles claim Moving Defendants violated 15 U.S.C.A. §§1692e(2)(A), 1692e(5), 1692e(10), 1692e(11), 1692f(1) and 1692i(a)(2) of the FDCPA by engaging in the following conduct:

    (a)    Falsely representing the character, amount and legal status of the alleged debt;

    (b)    Threatening to take legal action that was frivolous;

    (c)    Using false and deceptive means of communications to attempt to collect the alleged debt;

    (d)    Failing to indicate that Defendants were debt collectors, that they were attempting to collect a debt and that all information obtained would used for that purpose;

    (e)    Attempting to collect a subrogation lien from Plaintiffs and their counsel without any legal basis;

    (f)    Threatening to sue Plaintiffs and their counsel in a venue other than where the Plaintiffs lived or signed a contract;

    (g)    Engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt; and

    (m)[sic]  Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt.

Ex. A. ¶ 29 (a)-(m).

-11-

        **b.**      **The Supreme Court held in the *FMC Corp*. case that ERISA validly preempts Pennsylvania anti-subrogation law for self-funded ERISA plans.**

Under the law as declared by the United States Supreme Court, the Steeles are wrong:  the MCARE Act's anti-subrogation provision is indeed preempted by ERISA.  Accordingly, the Moving Defendants' collection efforts are valid and the Steeles' claim under the FDCPA must fail for this reason as well.

Courts examine the intent of Congress in enacting the particular federal law at issue in a case to determine if it preempts a state statute.  *FMC Corp. v. Holliday*, 498 U.S. 52, 56 (1990).  "'Preemption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'"  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95 (1983).   Under the Supremacy Clause of the United States Constitution where a federal law is found to preempt a state statute the federal law is controlling.  *Farina v. Nokia*, 578 F. Supp. 2d 740 (E.D. Pa. 2008).

The ERISA statute contains three provisions focused directly on the question of preemption which, interpreted together, establish that statute's broad preemptive scope.  First, ERISA contains a "preemption clause," 29 U.S.C. § 1144(a), establishing "as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA."  *FMC Corp.*, 498 U.S. at 59.  The Supreme Court has held that ERISA's preemption clause must be construed broadly.  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). A state law "relates to" an employee benefit plan, for purposes of the preemption clause, if it either has a connection with or reference to such a plan.  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990); *Albert Einstein Med. Ctr. v. Nat's Benefit Fund for Hosp. and Healthcare Employees*, 740 F.Supp. 343,

347 (E.D. Pa. 1989).  A state law need not be specifically designed to affect an employee benefit plan to be preempted; instead, due to the breadth of the preemption clause, states laws that indirectly effect such a plan are preempted under ERISA.  *Inst. of Pa. Hosp. v. Travelers Ins. Co.*, 825 F.Supp. 727, 731 (E.D. Pa. 1993).

Second, ERISA also contains a "savings clause," 29 U.S.C. § 1144(b)(2)(A), that protects state laws directly regulating private insurance companies from preemption under the statute's preemption clause. *Barber v. Unum Life Ins. Co. of Am.*, 383 F.3d 134, 141-42 (3d Cir. 2004), *citing Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003).  Third, the statute includes a "deemer clause," 29 U.S.C. § 1144(b)(2)(B), establishing that self-funded ERISA plans, like the Fund's Plan, shall not be deemed an insurance company for purposes of state laws; state laws that either have a connection with or reference to such "plans are preempted [by ERISA] because they relate to an employee benefit plan but are not 'saved' because they do not regulate insurance." *FMC Corp.*, 498 U.S. 61; *accord*, *Benefit Concepts v. Macera*, 413 F. Supp. 2d 404, 408 (E.D. Pa. 2005) ("[E]ven if a law 'regulates insurance' within the meaning of the saving clause, the deemer clause prevents parties from applying that law to self-funded employee benefit plans.").

In *FMC Corp.*, the issue before the United States Supreme Court was whether ERISA preempted "a Pennsylvania law precluding employee welfare benefit plans from exercising subrogation rights on a claimant's tort recovery." *FMC Corp.*, 498 U.S. at 54.  The employee benefit plan in the case was self-funded and the plans terms included "a subrogation clause under which a [p]lan member agree[d] to reimburse the [p]lan for benefits paid if the member recovers on a claim in a liability action against a third party." *Ibid*.  The plan in the case had previously

paid a portion of the medical bills of the daughter of a plan member which resulted from a motor vehicle accident. *Id.* at 54-55. The plan member filed a lawsuit on his daughter's behalf against the other driver which ultimately resulted in a monetary settlement. *Id.* at 55.

As that case was pending, the employee benefit plan informed the plan member it would seek reimbursement for the medical expenses it had previously paid. *Ibid.* The plan participant refused to reimburse the employee benefit plan by invoking an anti-subrogation provision in the Pennsylvania Motor Vehicle Financial Responsibility Law. *Ibid.*, *citing* 75 Pa. C.S. §§ 1719-1720. The plan member then filed a declaratory judgment action to establish that the state law prohibited the plan from exercising its subrogation rights on any recovery from the underlying negligence action. *Id.* at 56. Both the District Court and Third Circuit Court of Appeals held that the employee benefit plan could not exercise its subrogation rights because ERISA did not preempt Pennsylvania's anti-subrogation law. *Ibid.*

The Supreme Court reversed. The Honorable Justice O'Connor noted that Pennsylvania's anti-subrogation law referenced employee benefit plans governed by ERISA because it prohibited "subrogation or reimbursement from a claimant's tort recovery … paid or payable" by "any program, group contract or other arrangement for [the] payment of benefits." *Id.* at 58-59. Furthermore, the state anti-subrogation law had a connection to the ERISA benefit plans. *Ibid.* The Court explained there was such a connection because ERISA's preemption clause applies "to ensure that benefit plans are governed by … a single set of regulations," and not a "patchwork" of conflicting state regulations. *Id.* at 59-60. Pennsylvania's anti-subrogation law, if not preempted, would operate to do what ERISA's preemption clause aimed to prevent, because it would subject employee benefit plans to differing laws depending on whether a particular state had

-14-

enacted a similar anti-subrogation law. *Id*. Therefore, the Court held that ERISA preempted the anti-subrogation law in Pennsylvania's Motor Vehicle Financial Responsibility Law. *Id*. at 61.

Further, the Court held that while the Pennsylvania anti-subrogation law fell within ERISA's "savings clause" because it was a state law directly regulating insurance companies, ERISA still preempted Pennsylvania anti-subrogation law by operation of ERISA's "deemer clause." *Ibid*. As the employee benefit plan involved in the case was self-funded, the "deemer clause" relieved it from "state laws 'purporting to regulate insurance.'" *Ibid*. Restated, Pennsylvania anti-subrogation law was related to self-funded employee benefit plans governed by ERISA and, by operation of the "deemer clause," was not "saved" from preemption by the "savings clause" because such self-funded plans "may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws." *Ibid*. Therefore, the Court reversed the lower court decision and held ERISA preempted the application of Pennsylvania's anti-subrogation law to the self-funded employee benefit plan involved in the case. *Id*. at 65.

        **c.**        **The *FMC Corp*. decision applies to preempt the MCARE Act's anti-subrogation provision on which the Steeles erroneously rely**.

Under the holding in *FMC Corp*. the Fund's self-funded Plan is not subject to the anti-subrogation law within Pennsylvania's MCARE Act because that law also falls within the broad preemptive scope of ERISA. The anti-subrogation provision in the MCARE Act, 40 P.S. §1303.508, states, in pertinent part:

> **(a) General rule.**--Except as set forth in subsection (d), a claimant in a medical professional liability action is precluded from recovering damages for past medical expenses or past lost earnings incurred to the time of trial to the extent that the loss

is covered by a private or public benefit or gratuity that the claimant has received prior to trial.

**(c) No subrogation**.--Except as set forth in subsection (d), there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to a public or private benefit covered in subsection (a).

The MCARE anti-subrogation provision is subject to ERISA's preemption clause because it also "relates to" an employee benefit plan governed by that federal statute. *Hartenstine v. Daneshdoost*, 4 Pa. D.&C. 5th 282, 289-290 (C.P. Lehigh Co. 2008) ("[T]he United States Supreme Court held that ERISA preempts the application of [the MCARE Act anti-subrogation provision], and hence that medical expenses paid through an ERISA plan that provides a right of subrogation may be recovered in a personal injury action.") (internal citation omitted).

Similar to the motor vehicle anti-subrogation law at issue in *FMC Corp.*, the MCARE anti-subrogation provision references an employee benefit plan because it purports to prohibit "subrogation or reimbursement" from "a claimant's tort recovery to the extent the loss is covered by a private … benefit or gratuity … the claimant … received prior to trial." 40 P.S. § 1303.508. Further, the MCARE subrogation provision has a connection to ERISA benefit plans.  As highlighted in *FMC Corp.*, such a connection will be found to ensure employee benefit plans governed by ERISA are not subjected to a "patchwork" of state regulations.  *FMC Corp.*, 498 U.S. at 60.  If the MCARE anti-subrogation law were applicable to the Fund's Plan, it would be subjected to conflicting state subrogation statutes, frustrating the Fund's "continuing obligation to calculate uniform benefit levels nationwide." *FMC Corp.*, 498 U.S. at 60.  Accordingly, the anti-subrogation provision within the MCARE Act falls squarely within the broad scope of ERISA's preemption clause.

-16-

The MCARE Act's anti-subrogation provision does not fall within ERISA's "savings clause" because that clause is aimed only at a state statute or regulation directly regulating insurance companies. *FMC Corp.*, 498 U.S. at 61. As explained in Plaintiffs' Complaint, the Pennsylvania anti-subrogation law "prohibits a *private insurer* … from asserting a subrogation interest. …" Ex. A, at ¶ 10. (emphasis added). The Fund is a self-funded employee benefit plan governed by ERISA and ERISA's "deemer clause" relieves such a plan from any state laws such as the MCARE Act that purport to directly regulate insurance companies. *FMC Corp.*, 498 U.S. at 61; *Benefit Concepts v. Macera*, 413 F.Supp.2d 404, 408 (E.D. Pa. 2005). Restated, the anti-subrogation provision in the MCARE Act is subject to ERISA's broad preemption clause because it "relates to" the Fund a self-funded employee benefit plan governed by ERISA. Moreover, the anti-subrogation statute is not "saved" by ERISA's "savings clause" because the Fund, as a self-funded benefit plan, cannot be deemed to be an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws aimed at directly regulating insurance companies under the "deemer clause." *FMC Corp.*, 498 U.S. at 65. Therefore, ERISA preempts the application of the anti-subrogation provision in the MCARE Act to the Fund's Plan, which has a right to seek reimbursement from the Steeles under the terms of the Plan.

Accordingly, the Steeles' claim against Blake & Uhlig and Ms. Fletcher under the FDCPA is without merit because the Fund has a right to reimbursement from the Steeles under the Plan, and the Moving Defendants efforts to collect reimbursement have been proper.[9]

---

[9] To the extent that it is brought against Moving Defendants, the Steeles' declaratory judgment Count VII [sic] to establish that the Fund cannot seek reimbursement under the Plan must also be dismissed. This claim is founded upon the faulty assertion that the MCARE Act's anti-subrogation law

(continued...)

**d.**     **The decisions in the medical malpractice case cited by the Steeles, including one preventing the Steeles from recovering medical costs, are irrelevant because the Boilermakers' right of reimbursement is from *any* recovery obtained by the Steeles.**

The Steeles' only argument to the contrary are two rulings in the medical malpractice lawsuit, the second of which prevented the Steeles from recovering their medical costs in the malpractice suit.  The first decision was the Court's order, without opinion, denying the Fund's petition to intervene in the case.  A true and correct copy of the Order is appended as Ex. G.  The Steeles falsely characterize the court's decision on the Fund's petition to intervene as one that substantively decided if ERISA preempts Pennsylvania's anti-subrogation law.  Ex. A, at ¶¶ 10, 11.  The court simply signed an order denying the petition without articulating the basis for this decision.  A court may deny a petition to intervene for any number of reasons.[10]  The Common Pleas Court never issued a substantive opinion and did not address whether ERISA preempted Pennsylvania's anti-subrogation law.

Second, the Steeles rely on the Philadelphia court's further decision, without opinion, to grant a motion in limine which precluded the Steeles from recovering the medical expenses paid by the Fund.  A true and correct copy of the Order is appended as Ex. H.  While this ruling is questionable, and it was the Steeles' decision not to appeal it, *it is irrelevant*.  The Fund has the

---

[9](...continued)
prohibits the Fund from exercising its reimbursement rights under the Plan.  Ex. A, ¶ 42.  As established above, ERISA preempts the application of Pennsylvania's anti-subrogation statute to the Fund and under the plain language of the Plan the Fund has a right to reimbursement from monies the Steeles recovered in the medical malpractice action.  Ex. C.

[10] *Twp. of Radnor v. Radnor Recreational, LLC*, 859 A.2d 1, 5 (Pa. Commw. Ct. 2004); *Larock v. Sugarloaf Twp. Zoning Hearing Bd.*, 740 A.2d 308, 313 (Pa. Commw. Ct. 1999).  Both opinions listed the various reasons under the Pennsylvania Rules of Civil Procedure a court may deny a petition to intervene.

right to recover from any compensation by way of settlement, regardless of whether the compensation is for medical costs.

The Plan unequivocally states that the Fund has a right to reimbursement from Plaintiffs "to the extent of benefits provided by the Fund … immediately upon receipt of compensation *of any kind*, whether by judgment, compromise, settlement or otherwise, *for damages which include*, but are not limited to, *personal injury*, property loss or medical expenses whether or not such compensation is sufficient to make the Eligible Individual whole. Ex. C, p. 1  (emphasis added.). No order in the medical malpractice case interpreted the clear language in the Plan stating that the Fund has a right to reimbursement from *any* monies recovered in a lawsuit. As separate language in the Plan delineates the fact that the reimbursement obligation applies to judgment or settlement, the "any kind" language could only refer to the basis for compensation.  Further, specific language includes general "personal injury" recovery as well as recovery of "medical expenses", making absolutely clear that reimbursement may be sought from any personal injury recovery. [11] The reimbursement actions by the Moving Defendants were proper and valid, and therefore the Steeles' FDCPA claims have no basis.[12]

---

[11] In addition, under *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), this Honorable Court must defer to the Fund's interpretation of its reimbursement rights under the Plan unless the interpretation was unreasonable.  "The deferential standard of review of a plan interpretation 'is appropriate … when then trust instrument allows the trustee to interpret the instrument and when the trustee has in fact interpreted the instrument.'" *Moench v. Robertson*, 62 F.3d 553, 567 (3d Cir. 1995). Here, the Fund, under the Plan, is granted the power to interpret the language of that instrument. Ex. C, p. 68. The Fund reasonably interpreted the Plan's language to establish a right to reimbursement from the Steeles for monies recovered in the medical malpractice action.

[12] Assuming *arguendo* that the instant case involves "debt collectors" collecting a "debt" the substantive allegations in the Steeles' Complaint still fail to support their assertion that Moving Defendants violated the FDCPA.  The FDCPA prohibits a debt collector from utilizing "any false, deceptive, or
(continued...)

**B.      In the alternative, this Action should be transferred to the United States District Court for the District of Kansas pursuant to 28 U.S.C. §1404(a).**

In the alternative, the Pennsylvania Action must be transferred to the United States District Court for the District of Kansas, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interests of justice.

**1.      A transfer would forestall the need for the Motion to Dismiss to be decided here and allow similar issues in both courts to be decided together.**

If transfer occurs, then the Motion to Dismiss portion of this motion and the Fund's Motion need not be decided by this court.  Where a defendant's petition to transfer venue pursuant to 28 U.S.C. §1404(a) is granted, the court neither reaches nor rules upon any pending Rule 12(b) motions to dismiss.  *Rogal v. Skilstaf, Inc.*, 446 F. Supp. 2d 334, 335 (E.D. Pa. 2006).  As the Kansas Action against the Steeles specifically concerns the validity of the Steeles' reimbursement obligation, the key issues in the instant matter also arises in Kansas and these issues should be decided consistently and efficiently by one court.  Indeed, the Steeles appear to agree in their Motion to Dismiss the Kansas Action that one court should decide these issues. Ex. E, at ¶¶ 21-29.  For the reasons stated below, clearly that should be the District Court in Kansas.

---

[12](...continued)
misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. §1692e; *Cole v. Toll*, 2007 WL 4105482, at *3 (E.D. Pa. 2007). Furthermore, under §1692f a debt collector violates the FDCPA by "using 'unfair or unconscionable means to collect or attempt to collect any debts' including the 'collection of any amount . . . unless such amount it expressly authorized by the agreement creating the debt or permitted by law." *Jones v. Select Portfolio Servicing, Inc.*, 2008 WL 1820935, at *6 (E.D. Pa. 2008).  Defendants, by definition, did not violate the FDCPA because the Plan expressly established the Fund's right to reimbursement from Plaintiffs and ERISA statutorily granted the Fund the right to file a civil action to enforce the terms of the Plan.  Quite simply Defendants' attempts, at first, to amicably settle the amount of the Steeles' reimbursement obligation under the Plan and later, after this failed, invocation of the legal mechanism available to the Fund to enforce its reimbursement rights under the Plan did not, as a matter of law, violate the FDCPA.

**2.      The District Court in Kansas has jurisdiction and venue to hear this matter.**

In deciding the transfer motion, initially the court must determine if the action could have been brought in the proposed transferee forum.  *Connors v. R&S Parts & Serv., Inc.*, 248 F. Supp. 2d 394, 395 (E.D. Pa. 2003).  Clearly the Pennsylvania Action could have originally been brought in the United States District Court for the District of Kansas.

Blake & Uhlig, Ms. Fletcher and the Fund are all subject to personal jurisdiction in the United States District Court for the District of Kansas.  Both Blake & Uhlig and the Fund maintain their principal places of business within that state while Ms. Fletcher is a lawyer with Blake & Uhlig and resident of that state.  Ex. B, ¶¶ 1,2.  Finally, the United States District Court for the District of Kansas is a proper venue for the Pennsylvania Action under 28 U.S.C. § 1391(b), because all Defendants reside within that district and a substantial portion of the events giving rise to the claims occurred in that district.

**3.      The first-filed rule mandates that this matter be heard in Kansas with the earlier filed matter already there.**

In the context of ruling on a motion to transfer under 28 U.S.C. § 1404(a), it is well settled that "the presence of … a related case in the transferee forum is a substantial reason to grant a change of venue." *Prudential Ins. Co. of Am. v. Rodano*, 493 F. Supp. 954, 955 (E.D. Pa. 1980).  Most critical in such a situation is the so-called "first-filed" rule, which is mandated by the Third Circuit Court of Appeals as an important factor a court must consider when ruling on a motion to transfer and followed by district courts in this Circuit. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir.1988); *Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 403 (E.D. Pa. 2005).  The first-filed rule stands for the proposition that "[i]n all cases of concurrent

-21-

jurisdiction, the Court which first has possession of the subject must decide it." *Keating Fibre Intern., Inc. v. Weyerhaeuser Co., Inc.*, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006).

The rational for the rule is to "ensure that litigants receive a single determination of their controversy, rather than multiple decisions, which may conflict and require several appeals to different circuit courts of appeal [and] … to avoid the waste involved in duplicative suits, and the delay in providing prompt administration of justice." *Fischer & Porter Co. v. Moorco Intern. Inc.*, 869 F.Supp. 323, 325 (E.D. Pa. 1994). If the court determines the first-filed rule applies in a particular case it has the options of either dismissing without prejudice, staying or transferring the later filed action. *EMS Acquisition Corp. v. Structure Probe Inc.*, 2008 WL 375108, at *3 (E.D. Pa. 2008).

The lower courts' discretion to depart from applying the first-filed rule is limited to unusual or exceptional circumstances in a particular case. *Stone Creek Mechanical, Inc. v. Carnes Co., Inc.*, 2002 WL 31424390, at *2 (E.D. Pa. 2002); *Fischer & Porter Co.*, 869 F.Supp. at 325. As the Third Circuit explained in *E.E.O.C.*, "[i]nvocation of the first-filed rule is the norm not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." 850 F.2d at 974. In particular, the four circumstances which justify a court's decision to depart from the first-filed rule are as follows:

> (1) [B]ad faith on the part of plaintiff in the first-filed action; (2) forum shopping being a motivation for the filing of the first action; (3) the second filed action being further developed than the first at the time the motion is made; and (4) the filing of the first suit in one forum to preempt the opponent's imminent filing of a suit in a different, less favorable forum.

*Funkhouser v. Chi-Chi's, Inc.*, 2005 WL 2545300, at *1 (W.D. Pa. 2005), *citing EEOC*, 850 F.2d at 976. Accordingly, absent the four unusual or exceptional circumstances listed above, the first-

filed rule applies in cases of federal concurrent jurisdiction involving the same parties and issues. *Southampton Sports Zone, Inc. v. ProBatter Sports, LLC*, 2003 WL 22358439, at *4 (E.D. Pa. 2003).

Here, this Honorable Court must grant Moving Defendants' motion to transfer venue because the Kansas Action, which was filed before the Pennsylvania Action, involves the same parties and issues.[13]   None of the four enumerated circumstances that justify a decision to depart from the rule are present in the instant case.   The Fund filed the Kansas Action to enforce its legal rights to reimbursement from the Steeles for Ms. Steele's medical bills it paid under the Plan.   As discussed in detail above, the Kansas Action is neither baseless nor frivolous because the application of Pennsylvania's anti-subrogation law within the MCARE Act to the Fund is preempted by ERISA.   The Fund's Plan unequivocally provides it with a right to reimbursement "to the extent of benefits provided by the Fund … immediately upon receipt of compensation of *any kind*. …" (emphasis added).

Furthermore, the Fund filed the Kansas Action in a federal district that had jurisdiction over the case.   ERISA grants federal courts exclusive subject matter jurisdiction over a civil action filed by employee benefit plans governed by the statute to enforce the terms of the plan.   29 U.S.C. § 1132(e)(1).   The United States District Court for the District of Kansas is a proper venue for the Kansas Action because under ERISA a civil action to enforce the terms of an employee

---

[13] Indeed, the Steeles are attempting to have this Court decide the substantive issues before the Court in the Kansas Action through their declaratory judgment claim in Count VII [sic] seeking a declaratory judgment that the Fund may not exercise its reimbursement right.   However, this is the precise issue before the Court in the Kansas Action.   The Steeles' declaratory judgment claim is thus plainly an improper attempt to have this Court determine the substantive issues in the case pending in Kansas.

benefit plan may be filed in the judicial district where the plan is administered.  29 U.S.C. §1132 (e)(2).  The Fund's Plan is administered in Kansas.  Ex. B, ¶ 5; Ex. E, ¶9.  Furthermore, Plaintiffs are subject to personal jurisdiction in the United States District Court for the District of Kansas because the defendants in a civil action filed by an employee benefit plan governed by ERISA to enforce the terms of the plan are subject to "personal jurisdiction anywhere within the sovereign territory of the United States." *Trustee of the Nat. Elevator Indus. Pension, Health Benefit, Educ., Elevator Indus. Work Preservation Funds v. Alliance Elevator Corp.*, 2009 WL 723391, at *2 (E.D. Pa. 2009).  Under this rule "[t]he court's exercise of personal jurisdiction in an ERISA matter is not constrained by the 'minimum contacts' standard. . . ." *Trustees of Nat. Elevator Indus. Pension v. Ramchandani*, 1999 WL 179748, at *1 (E.D. Pa. 1999).  But assuming *arguendo* that the minimum contacts threshold is required, the Steeles are still subject to personal jurisdiction in Kansas; hundreds of thousands of dollars in benefits for the Steeles' medical expenses were requested to be sent from the Fund in Kansas.  Ex. B, ¶¶ 5-7.

Thus there are neither unusual nor exceptional circumstances in the instant case which would justify a decision to depart from the first-filed rule.  Plaintiffs' cannot dispute either that the Kansas Action was filed before the Pennsylvania Action or that it involves the same parties and underlying issues.  This request to transfer falls squarely within the first-filed rule.

### 4. This matter should also be transferred for the convenience of the witnesses.

This Honorable Court should also transfer for the convenience of the potential witnesses. The underlying dispute involves whether an employee benefit plan headquartered and administered in Kansas has a right to reimbursement for funds previously expended on a participants behalf.

-24-

The majority if not all witnesses familiar with the operation of the Fund's Plan are located in Kansas and not within the Eastern District of Pennsylvania.  Ex. B, at ¶ 6.  Furthermore, all original documents related to the Fund are located in its Kansas Headquarters.  *Id.* at ¶ 7. Additionally, neither the Steeles nor the medical providers involved in the malpractice action are necessary witnesses in the Pennsylvania Action or the Kansas Action as the dispute is over the rights of the Fund and not whether the medical payments were justified.  For convenience reasons as well as the first-filed rule, Defendants' motion to transfer venue should be granted.

## III.    CONCLUSION

For these reasons, Defendants Blake & Uhlig, P.A. and Lauren Fletcher respectfully request this Honorable Court to either enter an Order dismissing Plaintiffs' claim under the FDCPA pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted or, in the alternative, transfer this action to the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1404(a).

**MARGOLIS EDELSTEIN**

By:   */s/ JK724*
      JAMES R. KAHN, ESQUIRE
      I.D. no. 29127
      *jkahn@margolisedelstein.com*

      The Curtis Center, Suite 400 E
      170 S. Independence Mall West
      Philadelphia, PA 19106-3337
      Tel: (215) 922-1100

      Attorneys for Defendants Blake & Uhlig, P.A. and
      Lauren Fletcher

Dated: August 3, 2009