## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **TIMOTHY STEELE and** | : | |
| **JUDITH STEELE** | : | |
| | : | |
| **Plaintiffs,** | : | **Civil Action No. 09-2837** |
| **vs.** | : | |
| | : | |
| **BLAKE & UHLIG, P.A.,** | : | |
| **LAUREN FLETCHER; and** | : | |
| **BOILERMAKERS NATIONAL** | : | |
| **HEALTH AND WELFARE FUND.** | : | |
| | : | |
| **Defendants.** | : | |

### DEFENDANT BOILERMAKERS NATIONAL HEALTH AND WELFARE FUND'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

### I.     INTRODUCTION

Plaintiffs' complaint presents a striking attempted encroachment on the federal regulation of employee benefit plans under the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq*., and should be dismissed with prejudice.

The Defendant Boilermakers National Health & Welfare Fund ("Fund" or "Plan") maintains a self-funded employee welfare benefit plan governed by ERISA.  Plaintiff Timothy Steele is a participant in the Plan, and his wife Judith Steele is a Plan beneficiary.  Among other things, the Plan provides group health benefits on a self-funded basis, and the Fund paid on Mrs. Steele's behalf substantial medical expenses – in excess of $500,000 – incurred by her as a result of medical negligence.  The Steeles brought a third-party malpractice action in state court, which produced a settlement fund currently held in escrow by the Steeles' attorneys.  When the Fund, in accord with

the trustees' fiduciary obligation to preserve plan assets and the plainly- applicable reimbursement and subrogation provisions of the Fund's Plan of Benefits, sought reimbursement from the Steeles' recovery for the medical expenses it had paid out, the Steeles brought the present action, in which they charge the Defendants – the Fund and its Kansas-based attorneys – with "false, deceptive, misleading and unfair" efforts to seek recovery and threats to undertake "baseless legal action" to compel reimbursement.

Plaintiffs posit that Pennsylvania law nullifies the Fund's right, under its own Plan of Benefits and enforceable under federal law, to secure reimbursement of benefit payments where possible from third party recoveries, irrespective of the source and characterization of those recoveries.  In pursuing the instant claims Plaintiffs further assert that Pennsylvania law provides for causes of action and remedies against the Fund outside the extensive and exclusive remedies ERISA provides, and further that Pennsylvania law regulates the core ERISA relationship between the Fund on the one hand, and the Fund's participants and beneficiaries on the other, notwithstanding ERISA's extensive regulation of that relationship and ERISA's explicit preemption of state laws relating to employee benefit plans.

Thus, in prosecuting their claims, Plaintiffs seek not only to nullify an explicit Plan provision enforceable under federal law, and to create causes of action and remedies not provided by ERISA, but to subject the Fund to variable state regulation, contrary to Congress's express goal to achieve uniform national regulation of employee benefit plans under ERISA's statutory scheme.

Accordingly, even assuming the Complaint's factual allegations to be truthful, Plaintiffs' claims against the Fund are, as explained in detail below, squarely preempted by ERISA, and the Court should dismiss those claims, with prejudice.

## II.   <u>FACTUAL BACKGROUND</u>

The Complaint pleads that Plaintiff Timothy Steele was a member of the Boilermakers Union, and, through his employment, Mr. Steele was provided "medical insurance" through the Defendant, Boilermakers National Health and Welfare Fund. *See* Complaint ¶ 9. The Fund is alleged to be "a labor management trust fund that provides health benefits to employees." *Id.* ¶ 7. The Fund is, therefore, undisputably regulated by ERISA, 29 U.S.C. § 1003(a), and Mr. Steele clearly is a "participant" in the Fund's Plan of Benefits, as that term is defined in ERISA. 29 U.S.C. § 1002(7).

Plaintiff Judith Steele was seriously injured as a result of medical negligence and, as the Complaint acknowledges, the Fund itself made direct "payments" of medical benefits "to third party healthcare providers on behalf of Mrs. Steele in connection with [her injuries]," Complaint at 9, in an amount alleged to be $534,876.50. *Id.* ¶ 8. As a labor management trust that provides payments directly to providers – rather than providing medical benefits through insurance contracts – the Fund is self-funded, not insured. *Id.* ¶¶ 7, 9. *See also* Declaration of Lauren Fletcher ¶ 5 (attached as Exhibit B to Blake & Uhlig's and Lauren Fletcher's Motion to Dismiss (Dkt. No. 8)).

In addition to receiving medical benefits from the Fund, the Steeles retained counsel to bring a medical negligence action on their behalf. *Id.* The Complaint acknowledges that in connection with the Plaintiffs' third-party action, the Fund has asserted a "right of subrogation" pursuant to which the Fund is "entitled to recover medical expense payments it made to third party healthcare providers on behalf of Mrs. Steele in connection with injuries she suffered as a result of medical negligence." *Id.* Indeed, the Fund's Plan of Benefits provides explicitly for such reimbursement and subrogation rights, **irrespective of the source of the Participant's recovery**. Exhibit A hereto,

3

(Verified Petition to Intervene in Common Pleas Court litigation), ¶5; Exhibit C to Blake & Uhlig/Fletcher Motion to Dismiss at 1-2.

But this right, the Plaintiffs claim, is invalid, as "Pennsylvania law precludes [the Fund's] asserted right of subrogation," and its efforts to enforce the alleged right are said to be "baseless and unlawful."   Complaint ¶ 9.   Indeed, the thrust of the Complaint turns on the legal, not factual, assertion that, despite the explicit provisions of the Plan so providing, Pennsylvania's MCARE Act prohibits the Fund from "asserting subrogation interests in claims such as medical malpractice actions which are regulated by that statute."   *See* Complaint ¶ 42.

The medical negligence matter was litigated in the Court of Common Pleas of Philadelphia County, during which the Fund petitioned to intervene to protect its subrogation and reimbursement rights.  *Id.* ¶ 10.  The Petition to Intervene was denied, without opinion, *id.* ¶ 11, and the underlying medical negligence action was subsequently settled.  *Id.* ¶ 12.   During the course of the Common Pleas litigation, the parties to the action (without the participation of the Fund, whose intervention had been denied) litigated a Motion In Limine which resulted in an Order "precluding the Steeles from recovering medical expenses paid by" the Fund.  *Id.*  Although the Complaint asserts that "[t]he **procedural** history of the underlying medical negligence action also demonstrates that Defendants' position is meritless," Plaintiffs do not and cannot assert that the Court of Common Pleas decided the Fund's reimbursement claim on the merits, or that either the disposition of the motion to intervene or of the motion in limine collaterally estops the Fund's reimbursement/subrogation claims.  *Id.* ¶ 10 (emphasis added).   The Steeles instead allege that, in settling their medical negligence case, they "have not recovered any medical expense payments from the defendants in the Philadelphia medical negligence action . . ."  *Id.* ¶ 12.

The Complaint then alleges repeated "harassing, threatening and unlawful collection efforts in an attempt to obtain subrogation monies" undertaken on the Fund's behalf by their attorneys, Defendants Blake & Uhlig, P.A., and Lauren Fletcher, as the basis for the Steeles'claims of "unlawful debt collection practices."  In their Motion to Dismiss, Blake & Uhlig and Fletcher have detailed these allegations, which need not be repeated here – though it is worth noting that the Steeles make no allegation that *they* were personally contacted by any Defendant concerning their reimbursement obligation.  The Plaintiffs assert that the efforts to enforce the Fund's right to reimbursement have been undertaken on behalf of the Fund, to recover the allegedly invalid "subrogation lien." Complaint ¶ 8.

Plaintiffs seek from the Defendant Fund, among other things, compensatory and exemplary damages, injunctive relief, and a declaratory judgment that the Fund lacks any legal right to assert "any subrogation lien against Plaintiffs in connection with any monies that they have received by way of settlement of the Philadelphia medical negligence action, or otherwise."  The Steeles base this argument on the alleged effect of Pennsylvania law exemplified by the Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, *et seq.*, ("FCEUA") the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.* ("UTPCPL"), and most notably the Medical Care Availability and Reduction of Error Act, 40 P.S. § 1301.101 *et seq.* ("MCARE").  *See* Complaint, Second and Third Claims for Relief, ¶¶ 32-44, Second Request for Relief, page 9 (b)-(e) and Third Request for Relief, ¶ 44, at (a).  The Steeles also demand a jury trial, although under ERISA only equitable relief is available, without a right to trial by jury.  Complaint ¶ 45.

5

III.     **STANDARD TO BE APPLIED BY THE COURT ON THIS MOTION TO DISMISS**

As the Court is well aware, in deciding a Rule 12(b)(6) motion, the Court may dismiss an action "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Plaintiffs' "bald assertions," "unwarranted inferences" or, importantly, "legal conclusions" need not be credited, however. *Maio v. Aetna, Inc.*, 221 F.3d 472, 485 n.12 (3d Cir. 2000); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997). This well-known standard should be applied here.

The Court should note in addition that papers filed in the underlying Common Pleas case are all properly considered in connection with this Motion to Dismiss, and do not convert the Motion into one for Summary Judgment. *See, e.g.*, *Boateng v. Interamerican University, Inc.*, 210 F.3d 56, 60, 61 (1st Cir. 2000) (matters of public record and documents from prior state court adjudications); *Gemtel Corp. v. Community Redevelopment Agency of Los Angeles,* 23 F.3d 1542, 1544 n.1 (9th Cir. 1994) (public documents and records considered in deciding Motion to Dismiss); *Lal v. Borough of Kennett Square*, 935 F. Supp. 570, 572 n.1 (E.D. Pa. 1996) (Commonwealth Court Opinions and orders in earlier cases); *Arizmendi v. Lawson,* 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996) (administrative agency's letter decision); *Sparrow v. Reynolds*, 646 F. Supp. 834, 837-38 (D.D.C. 1986) (prior federal actions brought by plaintiff). Federal Rule of Evidence 201(d) requires a court to take judicial notice "if requested by a party and supplied with the necessary information." Rule 201(b) defines a "judicially noticed fact" as "one not subject to reasonable dispute in that it is . . . (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The pleadings and other docketed documents publicly available in the

earlier Common Pleas Court action and in current action in the District of Kansas fit this definition.
*See, e.g.*, *Iacaponi v. New Amsterdam Casualty Co.*, 379 F.2d 311, 312 (3d Cir. 1967) (affirming that
"it was not reversible error" for District Court, in granting Motion to Dismiss,  to take judicial notice
of Opinion in earlier state proceedings in finding action barred by *res judicata*), *cert. den*., 389 U.S.
1054 (1968); *Hill v. Goord,* 63 F. Supp.2d 254, 256 (E.D.N.Y. 1999) (judicial determinations in
plaintiff's earlier state action); *U.S. v. Lenox*, 1989 WL 143167 at *5 (E.D. Pa. 1989) ("the existence
and contents of" a Common Pleas Adjudication and Decree Nisi is "the kind of fact appropriate for
judicial notice").    The Fund accordingly requests this Court to take judicial notice of documents
filed in the earlier state court litigation in Pennsylvania and the pending federal action in Kansas.

Finally, in ERISA preemption matters, the party seeking preemption – here the Fund – bears
the burden of "overcoming the starting presumption that Congress does not intend to supplant state
law." *DeBuono v. NYSA-ILA Medical and Clinical Services Fund*, 520 U.S. 806, 814 (1997).  As
shown below, the Fund meets that burden here.

## IV.   ARGUMENT

### A.   ERISA Preempts Plaintiffs' Claims Against the Fund.

Plaintiffs' Second Claim for Relief , in Section VI of the Complaint, asserts against the Fund
claims under two Pennsylvania statutes, the FCEUA and the UTPCPL.   Plaintiffs also seek
compensatory and exemplary damages, together with attorney's fees, costs and injunctive relief,
pursuant to the UTPCPL.   In their Third Claim For Relief Plaintiffs seek a declaratory judgment that

they are not subject to the Fund's reimbursement claim, asserting that "[p]ursuant to Pennsylvania's MCARE Act, private insurers such as [the Fund] are prohibited from asserting subrogation interests in claims such as medical malpractice actions which are regulated by the statute."  Complaint ¶ 42.

Even assuming as true the Complaint's factual allegations, the claims in the Second Claim for Relief are clearly preempted, as specifically argued in point 2 below, because they assert causes of action and seek relief against a plan of benefits outside of what ERISA provides.  In addition, Plaintiffs' claims are preempted as they encroach on fiduciary regulation under ERISA, as discussed below in point 3.  Finally, the request for a declaratory judgment asserted in the Third Claim for Relief likewise should be dismissed, because it is similarly decided by ERISA's clear preemption of the Pennsylvania MCARE statute.  This is discussed below at point 4.  Immediately below we set forth the applicable principles guiding application of ERISA's broad preemption of state law.

### 1.     Employee Benefit Plans Are Subject to Extensive, Exclusively Federal, Regulation Under ERISA

As this Court is well aware, "the laws of the United States . . . shall be the supreme law of the land, any thing in the constitution or laws of any state to the contrary notwithstanding." Constitution of the United States, Article VI (Second paragraph).  Federal regulation of employee benefit plans under ERISA is a conspicuous example of the supremacy of federal law where state and federal law conflict or where state law purports to regulate activity where Congress has established exclusive federal regulation.

Indeed, as the Supreme Court has made clear on many occasions, "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*,

542 U.S. 200, 208 (2004). Its aim, as expressed in the Act's statement of Congressional findings and policy, is to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the federal courts.'" *Id*. (quoting 29 U.S.C. § 1001(b)).

To further these goals, Congress enacted a system of intricate procedural remedies available to employee benefit fund participants such as the Steeles, tailored around "one of the broadest preemption clauses ever enacted by Congress." *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1175 (9th Cir. 2004) (citations omitted). The Supreme Court has characterized ERISA preemption to be of "conspicuous breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, 69 (1999), and has summarized its effect in *Davila*:

> To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).
>
> ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for enforcement." *Russell,* 473 U.S., at 147, 105 S.Ct. 3085 (internal quotation marks omitted). This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans. As the Court said in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987):
>
>> "[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. 'The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence

that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.' " *Id.,* at 54, 107 S.Ct. 1549 (quoting *Russell, supra,* at 146, 105 S.Ct. 3085).

Therefore, any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted.

542 U.S. at 208-209.

A review of the statute reveals what have been referred to as additional "core" ERISA concerns, among others: extensive provisions governing reporting and disclosure by plans (ERISA Title I, Subtitle B, Part 1, sections 101-111), participation and vesting in plans (Subtitle B, Part 2, sections 201-211), funding (sections 301-302), and the responsibilities of individuals with administrative responsibility over plans – their "fiduciaries" – in Part 4 of Subtitle B, ERISA sections 401-414.  29 USC §§ 1021-1114.  *See Egelhoff v. Egelhoff ex-rel. Breiner*, 532 U.S. 141, 147-48 (2001) (holding preempted state law that "binds ERISA plan administrators to a particular choice of rules for determining beneficiary status").

But while ERISA's preemption of state law is broad, with this background in ERISA's core concerns one can readily see that ERISA's preemptive effect is not unlimited.  The Supreme Court has stated "where 'federal law is said to bar state action in fields of traditional state regulation . . . we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear manifest purpose of Congress.'" *California Division of Labor Standards Enforcements v. Dillingham Construction*, N.A., *Inc.*, 519 U.S. 316, 325 (1997)(internal citations and quotations omitted).  Certain state laws of "general application" that affect employee benefit plans are not preempted, despite ERISA's broad preemptive provisions. *See generally De Buono v. NYSA-ILA Medical and Clinical Services Fund*, 520 U.S. 806, 810-816

10

(1997). Thus, consistent with Congress's extensive regulation of ERISA's "core" concerns, generally-applicable state law may be permitted to affect benefit plans in "areas where ERISA has nothing to say . . . notwithstanding [those laws'] incidental effect on ERISA plans." *Egelhoff v. Egelhoff*, 532 U.S. 141, 147-148 (2001).

By contrast, state law or state law claims that conflict with ERISA or "implicate an area of core ERISA concern" are clearly preempted. *Id.* For instance, in *FMC Corporation v. Holliday*, 498 U.S. 52 (1990), the Supreme Court found preempted Pennsylvania's Motor Vehicle Financial Responsibility Law, under which the Commonwealth – similar to the MCARE – sought "to preclude employee welfare benefit plans from exercising subrogation rights on a claimant's tort recovery," *id.* at 54, because such a law directly affects plan structure and "prohibits plans from being structured in a manner requiring reimbursement in the event of recovery from a third party." *Id.* at 60. Thus, the Court recognized that "[a]pplication of differing state subrogation laws to plans would therefore frustrate plan administrators' continuing obligation to calculate uniform benefit levels nationwide." *Id.* To permit patchwork state restrictions on plan reimbursement rights would thwart "[o]ne of the principal goals of ERISA [] to enable employers to establish a uniform administrative scheme," which is impossible "if plans are subject to different legal obligations in different States." *Egelhoff* at 148. *See also Allessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 524-25 (1981) (state law that prohibits method of calculating pension benefits preempted); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983) (state law requiring pregnancy benefits preempted); *Sunbeam-Oster Co. Group Benefit Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1374 (5th Cir. 1996) ("it is well established that state subrogation doctrines are preempted under ERISA"). Plaintiffs' claims – both the causes of action asserted and the remedies sought – here clearly

implicate core ERISA concerns, and are therefore preempted.

2.      **Because The Causes of Action and Remedies Available Against a Plan Under ERISA Section 502 Are Exclusive, Plaintiffs' State Law Claims Seeking Damages and Other Relief Are Clearly Preempted**

As discussed above, section 502 of ERISA, 29 U.S.C. § 1132, establishes federal jurisdiction over claims seeking the recovery of benefits and other relief from employee benefit plans. Subsection (a)(1)(B) of Section 502 authorizes the bringing of a civil action by a participant or beneficiary "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Similarly, where a plan fiduciary breaches his/her duties to the plan or to the plan's participants and beneficiaries, ERISA § 502(a)(2) authorizes a participant to bring a cause of action for relief available under ERISA § 409, 29 U.S.C. § 1109, which, however, only permits the participant to recover for "any losses to the plan" resulting from the breach. *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985). Finally, ERISA § 502(a)(3) – under which the Boilermakers Plan is seeking to enforce its subrogation rights in the Kansas federal court action – authorizes equitable suits by plan fiduciaries "to enforce . . . the terms of plans" – which includes plan provisions regarding the plan's subrogation rights. *See, e.g., Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006).

As exemplified by the Court's discussion in *Davila* set forth above, it is accordingly firmly established that the various remedies provided under Section 502 are exclusive, as they "completely preempt" additional remedies purportedly available under state law.[1]  "The limited  remedies

---

[1]       The courts sometimes refer to the preemptive effect of Section 502  as "conflict preemption" or, especially with respect to federal jurisdiction following removal, as "total preemption."  ERISA's broad preemption provision, Section 514, 29 U.S.C. § 1144(a), provides that

available under ERISA are an inherent part of the 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Davila* at 215.

Indeed, few tenets of employee benefits law under ERISA are better established than the exclusivity of causes of action and remedies under section 502, thus prohibiting compensatory and exemplary damages, precisely the relief sought here.  As Justice Stevens wrote for the Court nearly twenty-five years ago in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) (finding no basis for exemplary damages for fiduciary breach):

> The six carefully integrated civil enforcement provisions found in section 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.

*Id.* at 146 (emphasis in original).  *See also Mertens v. Hewitt,* 508 U.S. 248 (1993) (no compensatory damages in ERISA suit against non-fiduciary).

It therefore should not be surprising that the Court of Appeals for the Third Circuit has held claims brought under Pennsylvania law similar to those raised here – 42 Pa. C.S. §8371 (the "bad faith statute") – to be both expressly preempted and conflict preempted by ERISA.  *See Barber v. Unum Life Insurance Company of America*, 383 F.3d 134, 140-41 (3d Cir. 2004).  In *Barber*, the Court of Appeals recognized that, under the concept of conflict preemption, "state laws that supplement ERISA's civil enforcement scheme conflict with Congress' intent to make the ERISA remedy exclusive."  *Id.* at 140 (citing *Davila*, 542 U.S. at 209).   In reviewing this area of the law as established by the Supreme Court, the Court of Appeals held:

that statute "supersede[s] any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.  The effect of this provision is often referred to as "express preemption."

13

> [A] state statute is preempted by ERISA if it provides "a form of
> ultimate relief in a judicial forum that added to the judicial remedies
> provided by ERISA," or stated another way, if it "duplicates,
> supplements, or supplants the ERISA civil enforcement remedy." 42
> Pa. C.S. §8371 is such a statute because it is a state remedy that
> allows an ERISA-plan participant to recover punitive damages for
> bad faith conduct by insurers, supplementing the scope of relief
> granted by ERISA.

383 F.3d at 140-41 (internal citations omitted).

Accordingly, the bad faith statute under 42 Pa. C.S. §8371 was held subject to conflict

preemption. *Id.* at 141. The Court of Appeals further held that the bad faith statute was also

expressly preempted by Section 514(a), because the bad faith statute is a law which "relates to"

employee benefit plans. *See id.* at 144 ("Pennsylvania's bad faith statute does not 'regulate

insurance' within the meaning of ERISA's saving clause and is expressly preempted by ERISA").

The UTPCPL, like the bad faith statute, is asserted to provide against the Plan or its

fiduciaries causes of action arising from Plan or fiduciary conduct and to provide for damages and

exemplary remedies for breaches of the standards set forth in that statute. 73 P.S. 201-9.2. It is clear

that both the UTPCPL's purposes go well beyond the relief ERISA provides. *Id.*[2] Accordingly, a

number of District Courts in this Circuit have used the *Barber* analysis to hold the UTPCPL to be

preempted by ERISA. *See, e.g.*, *Stout v. AFSCME District Council 33,* 2009 WL 159293 (E.D. Pa.

2009) (Pennsylvania bad faith and UTPCPL claims against former employer preempted by ERISA);

*Brown v. Independence Blue Cross*, 2008 WL 2805600 (E.D. Pa. 2008) at *6 (UTPCPL claim both

completely and expressly preempted by ERISA); *Viechnicki v. Unumprovident Corp.*, 2007 WL

433479 (E.D. Pa. 2007) at *6 ("claim brought under Pennsylvania's Unfair Trade Practices and

---

[2]     Violations of the FCEUA constitute violations of the UTPCPL, and thus appear to
provide for the remedies provided under the UTPCPL. *See* 73 P.S. § 2270.5.

Consumer Protection Law is also not specifically directed toward entities engaged in insurance" and is "preempted by ERISA"); *Gilberston v. Unum Life Insurance Co. of America,* 2005 WL 1484555 (E.D. Pa. 2005) at *3 (UTPCPL claim preempted); *Murphy v. Metropolitan Life Insurance Co.*, 152 F. Supp.2d 755, 758 (E.D. Pa. 2001) (UTPCPL claim expressly preempted by ERISA). "However characterized, plaintiff's claims arise from the manner in which benefits were administered or are premised on the type or extent of benefits which were promised or provided and are preempted." *Schultze v. Thomas & Betts Corp.*, 1994 WL 410826 (E.D. Pa. 1994) at *2 (holding UTPCPL and other state law claims preempted).  *See also Olick v. Kearney*, 451 F. Supp.2d 665, 679 (E.D. Pa. 2006) (claims that insurer refused to pay valid claims and unlawfully cancelled employee's coverage "fall within the holding of *Davila,*" and that it "discussed settlement in bad faith" and compelled insured to litigate "squarely fall within the holding of *Barber*").

In short, these cases make clear that where, as here, a plaintiff's state law claims seek damages from her benefit plan, relief is available only if authorized by ERISA.  Where, as here, no such relief is available under ERISA, the claims, as preempted, are barred.

3.      **Plaintiffs' Claims are an Impermissible Attempt to Evade the Exclusive Fiduciary Responsibilities Defined by ERISA and to Supplement the Sole Remedies Provided by Congress for such Breaches**

Plaintiffs' claims are *completely preempted* because they encroach upon the relationship between a plan (or a plan's fiduciaries, through whom the plan acts) and a plan's participants, clearly a core ERISA concern.  Fiduciaries have extensive obligations to plan participants, set forth in ERISA sections 401 to 414, 29 U.S.C. §§ 1101-1114.  Among these are the obligation to "discharge

his duties with respect to the plan . . . in accordance with the documents and instruments governing the plan  insofar as such documents and instruments are consistent with the provisions of this title and Title IV [ERISA]," and with no exception for conflicting state law.   ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  In addition, fiduciaries are charged generally with the obligation to preserve and maintain trust assets and to "use reasonable diligence to discover the location of the trust property and to take control without unnecessary delay."  *Central States Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 572 (1985). In pursuing its subrogation/reimbursement claim, the Fund and its trustee fiduciaries act in accordance with these core ERISA requirements.

Moreover, when fiduciaries fail to discharge these federally defined duties, Congress has provided an exclusive remedy.  A plan participant may bring a civil action pursuant to ERISA § 502(a)(2) for the relief available under ERISA § 409: liability to make good for "any losses to the plan."  Congress did not allow participants to seek relief unique to them; that is of no benefit to the Plan as a whole.  *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).

For Plaintiffs to prevail in this matter, therefore, would require this Court to find that Pennsylvania law effectively extinguishes the Fund's fiduciary duty to follow the plan document, eviscerates its duty to prosecute reimbursement claims, and bestows upon Plaintiffs a remedy for damages that is found nowhere in ERISA's comprehensive regulatory scheme.  Under Plaintiffs' flawed logic, the Court must find that actions in pursuit of the Fund's reimbursement claims that are authorized, and may also be required to discharge fiduciary obligations, nonetheless give rise to civil liability when not performed in accord with Pennsylvania law.  And, because the law on which Plaintiffs rely applies only to Pennsylvania Plan participants, for Plaintiffs to prevail the Court must

16

compel the Plan (which has participants across the nation) to adjust its administrative practices according to each state's law of subrogation and reimbursement, thus subjecting the Plan to disparate regulation under state law, and the varying threat of civil liability.  It is hard to imagine a clearer encroachment on the core of ERISA and the "uniform regulatory regime over employee benefit plans" that statute prescribes.  *See Davilla* at 208;  *Egelhoff* at 147-148; *FMC* at 54, 60.

Finally, Plaintiffs' claims fail because they turn entirely on the extinguishment of the Fund's reimbursement claim by the MCARE; in short, if the Fund's reimbursement claim is not "baseless," as alleged, no alleged violation of state law can be found.  *E.g.* Complaint, ¶¶ 9, 10, 19, 42.  As explained immediately below, the Fund's claim is not baseless and MCARE does not extinguish the Plan's subrogation and reimbursement claims.


### 4.      ERISA Likewise Preempts Pennsylvania's MCARE Statute, As It Purports To Nullify a Provision of the Fund's Plan of Benefits

The Complaint's central claim – that the MCARE extinguishes the Fund's subrogation and reimbursement rights – is likewise preempted by ERISA.

As is well-recognized, "it is commonplace for welfare benefit plans — particularly disability and health plans — to include subrogation and reimbursement provisions."  ABA Section of Labor and Employment Law, EMPLOYEE BENEFITS LAW 1041 (2d Ed. 2000).  Such provisions may be enforced by a plan's fiduciary, acting to "enforce . . . the terms of the plan," under ERISA section 502(a)(3), 29 U.S.C. § 1132 (a)(3).  *See Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006).  Consistent with exclusive federal regulation of employee benefit plans, such matters are committed to the exclusive jurisdiction of the federal courts under ERISA section 502(e), 29

17

U.S.C. § 1132(e).[3]

Because reimbursement and subrogation provisions are common, there has been much litigation over them.  As noted, the Supreme Court has squarely addressed the issue of whether Pennsylvania anti-subrogation law (although not the MCARE) survives ERISA preemption, in *FMC v. Holliday*, 498 U.S. 52 (1990).  The high Court's holding was clear and unequivocal: as applied to self-funded plans like the Fund, **Pennsylvania law purporting to extinguish subrogation and reimbursement rights is pre-empted, and thus ineffective**.

In *FMC* the Court found that in Pennsylvania's Motor Vehicle Financial Responsibility Law the Commonwealth impermissibly sought to "[preclude] employee welfare benefit plans from exercising subrogation rights on a claimant's tort recovery," *id.* at 54, exactly the result that Plaintiffs urge here.  Central to this holding were two findings of the law's encroachment on core ERISA concerns: first, the preempted law's nullification of specific plan provisions, thus "prohibit[ing] plans from being structured in a manner requiring reimbursement in the event of recovery from a

---

[3]        For this reason, the Third Cause of Action, seeking declaratory judgment, is itself a claim for "benefits due" arising under Section 502 of ERISA.  *Levine v. United Healthcare Corp.*, 402 F.3d 156, 162-63 (3rd Cir. 2005).  In *Levine,* the Court of Appeals relied on two other Court of Appeals decisions from other circuits on this point, *Arana v. Ochsner*, 338 F.3d 433 (5th Cir. 2003), and *Singh v. Prudential Healthcare Plan, Inc.*, 335 F.3d 278 (4th Cir. 2003), commenting that while such claims "attempt [ ] to characterize their claim as one looking only at state law, the essence of the claim concerns an ERISA plan."  402 F.3d at 163.  The Court concluded: "Where, as here, plaintiffs claim that their ERISA plan wrongfully sought reimbursement of previously paid health benefits, the claim is for 'benefits due' and federal jurisdiction under section 502(a) of ERISA is appropriate."  *Id.*  The Third Circuit reaffirmed this holding in *Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 308 (3rd Cir. 2006), concluding that a claim, in whatever form, that an ERISA plan "wrongfully sought reimbursement of previously paid health benefits" from a plan beneficiary places the "benefits . . . under something of a cloud," (quoting *Arana*, 338 F.3d at 438), and states a claim for "benefits due" giving rise to federal jurisdiction under Section 502(a) of ERISA.  Such claims, as we show below, are completely preempted by ERISA.  *Wirth*, 469 F.3d at 308.

third party." *Id. at 60.* Second, in *FMC* the Court noted that "[a]pplication of differing state subrogation laws to plans would . . . frustrate . . . uniform benefit levels nationwide," again threatening a core ERISA concern. *Id.*

Thus, in numerous matters since the Supreme Court's articulation of limits on preemption in *De Buono* and its progeny, courts have found preempted state law attempts to limit or extinguish ERISA-covered plans' subrogation and reimbursement rights. *See, e.g., Community Ins. Co. v. Richardson*, No. 97-4390, 172 F.3d 872, 1999 WL 71601 (6th Cir. 1999) (unpublished table decision) (preempting Ohio law purporting to deny claims for medical benefits and abolishing subrogation claims); *Blue Cross and Blue Shield of Alabama v. Sanders,* 138 F.3d 1347, 1355 (11th Cir. 1999) (Alabama law purporting to extinguish ERISA plan's reimbursement rights preempted by ERISA); *Electro-Mechanical Corp. v. Ogan,* 9 F.3d 445 (6th Cir. 1993) (state statute prohibiting reimbursement from medical malpractice recoveries preempted by ERISA); *Thomas v. Administrative Committee of Wal-Mart Stores, Inc.,* 210 F. Supp.2d 1296, 1301 (M.D. Fla. 2002) (holding Florida anti-subrogation statute "interfere[s] with the operation of an employee benefit plan to the extent that it may preclude operation of a reimbursement provision interpreted under an ERISA regulated employee benefit contract"); *MetraHealth Insurance Co. v. Drake,* 68 F. Supp.2d 752, 756 (E.D. Tex. 1999) ("[s]tate doctrines of subrogation are preempted by ERISA. . . . [t]he rule of reimbursement is provided by the language of the plan"); *Daughtry v. Union Cent. Life Ins. Co.,* 33 F. Supp.2d 1174, 1177-78 (D. Ariz. 1999) (preempting state law generally abolishing subrogation of tort claims); *Devine v. American Benefits Corp.*, 27 F. Supp.2d 669, 672 n.2 (noting that courts have "frowned on attempts by participants or beneficiaries utilizing narrow principles of state anti-subrogation law to deny an ERISA sponsored plan its customary right of reimbursement"); *Budinger*

19

*v. McGann*, 1987 WL 268934 (C.D. Calif. 1987) (declaring preempted California law purporting to

extinguish the subrogation rights of a multiemployer welfare trust in a medical malpractice action);

*see also Levine v. United Healthcare Corp.*, 402 F.3d 156, 163-68 (3d Cir. 2005) (pre-empting New

Jersey law restricting subrogation and reimbursement rights).  To find that MCARE prohibits

enforcement of the Boilermakers Plan's subrogation and reimbursement provisions would encroach

impermissibly on core fiduciary obligations under ERISA.

Nor can the MCARE be saved by resort ERISA preemption's "insurance savings clause"

under section 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A).   In *FMC*, the Court held that ERISA's

deemer clause exempted self-funded ERISA plans – like the Fund – from state laws that "regulate

insurance."  *Id.* at 61; *Complaint* ¶¶ 7, 9.   In other words, employee benefit plans like the Fund that

provide benefits directly from their own assets, rather than through separate contracts of insurance, are

not deemed "insurance companies, other insurers, or engaged in the business of insurance for purposes

of . . . state laws" and are not subject to state laws regulating insurance companies.  *FMC,* 498 U.S. at

61.   Thus, the Court in *FMC* determined that ERISA preempted Pennsylvania's Motor Vehicle

Financial Responsibility Law, a law that attempted to preclude employee welfare benefit plans "from

exercising subrogation rights on a claimant's tort recovery," as it pertained to self-funded employee

benefit plans.  *Id.* at 54.

Without more it follows that Pennsylvania's MCARE Act, which also attempts to preclude

employee welfare benefit plans from exercising their subrogation rights, is preempted as far as it applies

to self-funded employee benefit plans, such as the Fund.  Like other state antisubrogation law found

to be preempted, the MCARE specifically purports to extinguish subrogation and reimbursement rights,

stating explicitly that "there shall be no right of subrogation or reimbursement from a claimant's tort

20

recovery with respect to a public or private benefit" [with exceptions not relevant here].  40 P.S. §

1303.508(c).  Because the MCARE clearly encroaches on core ERISA concerns, it should be found

preempted. *See generally Medical Mutual of Ohio v. DeSoto*, 245 F.3d 561, 572-73  (6th Cir. 2001)

("Under Supreme Court precedent, a self-funded plan may not be deemed an insurance company and

**therefore will be exempt from saved state laws**.") (emphasis added).[4]

Nor are Plaintiffs' claims saved by the allegation that Plaintiffs "have not recovered any medical

expense payments . . . "  Complaint, ¶ 12; *see also* ¶ 43.  The Fund's right of reimbursement runs to any

third party recovery Plaintiffs may receive, irrespective of the source, or the characterization of the

recovery.  Exhibit A hereto, ¶ 5; Exhibit C to Blake & Uhlig/Fletcher Motion to Dismiss, at 1, §§ 3,

3(a)(obligation to reimburse from damages including "but shall not be limited to, compensation

received and/or claimed for personal injury . . . [and] from compensation of any kind . . . whether or

not . . . sufficient to make . . . whole.")

Such provisions are clearly enforceable.  Two of the "great concerns" of ERISA are "to ensure

the integrity of written plans, and to enforce them as written," and to safeguard "the important role

that reimbursement of overpaid plan benefits plays in the continuing viability of plans for all other

beneficiaries." *Northcutt v. General Motors Hourly-Rate Employees Pension Plan*, 467 F.3d 1031,

1038 (7th Cir. 2006) (plan's contractual reimbursement scheme which treated suspended payment

of pension benefits as reimbursement for a past disability and pension plan overpayments "does not

violate any aspect of ERISA . . . does [not] violate a clearly articulated policy of ERISA . . . [and]

fosters the integrity of a written plan and ensures the availability of funds for other participants.").

---

[4]        The Fund also hereby joins the arguments of Defendants Blake & Uhlig and Lauren
Fletcher made in support of their Motion to Dismiss with respect to the MCARE Act.

ERISA preemption protects these policies against state encroachment.

> ERISA preempts the operation of [state statutes] to the extent that the state law precludes operation of the [subrogation and reimbursement] clause in the plan. We will thus give the plan's terms and conditions full effect, because to do otherwise would undermine not only the agreement between the parties but the expectations of all other plan participants who have an interest in the plan's funds and benefits. The plan in this case did not undertake to be responsible ultimately for medical expenses caused by third parties, but only to advance those expenses with the expectation of reimbursement. A state statute that would alter these benefits would impermissibly interfere in an area preempted by ERISA.

*McInnis v. Provident Life & Accident Insurance Co.*, 21 F.3d 586, 590 (4th Cir. 1994).

Indeed, allegations such those made here, that Plaintiffs have received no reimbursement for medical expenses (*Complaint*, ¶43), are not fatal to reimbursement claims, and have been rejected as inconsistent with ERISA's fundamental policies.  Such arguments or allegations "[do] not establish[] that full reimbursement of subrogation claims conflict[] with ERISA's policies [. . .]  In fact, the policies underlying ERISA generally counsel reliance on unambiguous plan language." *Bollman Hat Co. v. Root*, 112 F.3d 113, 118 (3d Cir. 1997).  According to the Third Circuit, "the Supreme Court has emphasized the primacy of plan provisions absent a conflict with the statutory policies of ERISA," *id.* (quoting *Van Orman v. American Insurance Co.*, 680 F.2d 301, 312 (3d Cir. 1980)), and the Plan's reimbursement and subrogation provisions in the present case unambiguously require the Steeles to reimburse the Fund out of the monies they have recovered in their third party action, regardless of the way those monies have been characterized by the parties.  *See Exhibit C to Blake & Uhlig's Motion to Dismiss*.  The Plan's language requiring reimbursement conflicts with no statutory policy of ERISA, and indeed furthers those policies by "foster[ing] the integrity of a written plan and ensur[ing] the availability of funds for other participants." *Northcutt*, 467 F.3d at 1038.

Finally, the Steeles cannot successfully assert that they have been deprived of benefits unjustly

or that the Fund will somehow be improperly enriched should they be reimbursed.  The Fund paid out substantial sums of direct and crucial benefit to the Steeles at a time of a severe medical crisis in their lives.  The payment was made on the express condition set forth in the Plan that the Steeles would pay the money back if they recovered sums from the third parties primarily responsible for the injuries Mrs. Steele suffered.  *Exhibit C to Blake & Uhlig Motion,* § 3. ("The Fund shall pay benefits only on the condition that [participant]...shall (a) reimburse the Fund . . .")   In similar contexts, the Third Circuit has on a number of occasions rejected the notion that a Plan "would be unjustly enriched" by recovering from its beneficiary anything less than the full amount it paid out.  "Enrichment is not 'unjust' where it is allowed by the express terms of the . . .plan."  *Ryan by Capria-Ryan v. Federal Express Corp*., 78 F.3d 123, 127 (3d Cir. 1996) (quoting *Cummings v. Briggs & Stratton Retirement Plan*, 797 F.2d 383, 390 (7th Cir.), *cert. denied*, 479 U.S. 1008 (1986)).  "Indeed, it would be inequitable to permit the [beneficiaries] to partake of the benefits of the Plan and then, after they had received a substantial settlement, invoke common law principles to establish a legal justification for their refusal to satisfy their end of the bargain."  *Ryan*, 78 F.3d at 127-28.  So too here.

  **B.** **In the Alternative, This Case Should Be Transferred to the United States District Court for the District of Kansas, since the Steeles' "Declaratory Relief" Sought Against the Fund Is the Very Same Claim That Is Being Litigated Against the Steeles as Defendants in the Fund's Action under ERISA § 513(a)(3) Filed Prior to this Action.**

.

  As is fully briefed in Section II.B.of the Memorandum of Law in Support of Motion of Defendants Blake & Uhlig, P.A. and Lauren Fletcher to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief Can Be Granted or, in the Alternative, to Transfer the Case (Doc. 9), since the Fund was the first to file suit in the United States District Court for the District

of Kansas, the District of Kansas is the proper venue in which this case should be heard.  Plaintiffs

in the suit presently before this Court, who are actually the Defendants in the Kansas lawsuit, filed

a Motion to Dismiss for Lack of Personal Jurisdiction, to Dismiss for Failure to State a Claim Upon

Which Relief Can Be Granted, or in the Alternative, to Transfer Venue in the District of Kansas.[5]

The Fund filed a brief in opposition to the Steeles' aforementioned motion, which is attached hereto

as Exhibit B.  The Fund's position in opposition to the Steeles' motion to transfer venue to

Pennsylvania can be found in Section II.C. of Exhibit B, which we incorporate here by reference.


## V.      CONCLUSION

For all the foregoing reasons, Defendant Boilermakers National Health & Welfare Fund

respectfully submits that its Motion to Dismiss should be granted.


                              Respectfully Submitted,

                              **SPEAR WILDERMAN P.C.**

                              **BY:** SLS2217
                                    **BENJAMIN EISNER**
                                    **SAMUEL L. SPEAR**
                                    Attorney ID#: 30370
                                    230 South Broad Street, 14th Floor
                                    Philadelphia, PA 19102
                                    (215) 732-0101
                                    (215) 732-7790 (facsimile)
                                    **Attorneys for Defendant Boilermakers**
                                    **National Health & Welfare Fund**

Date:   September 16, 2009

---

[5]      A copy of the Steeles' Kansas Motion is attached as Exhibit E to Blake & Uhlig's
Motion to Dismiss filed in this Court.

24