**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TIMOTHY STEELE and JUDITH STEELE, H/W | ) ) ) Civil Action No. 09-02837 |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| BLAKE & UHLIG, P.A., LAUREN FLETCHER, and BOILERMAKERS NATIONAL HEALTH & WELFARE FUND, | ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS BLAKE & UHLIG, P.A. AND LAUREN FLETCHER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND IN OPPOSITION TO DEFENDANTS BOILERMAKERS NATIONAL HEALTH & WELFARE FUND, BLAKE & UHLIG, P.A. AND LAUREN FLETCHER'S MOTION TO TRANSFER VENUE**

## I.     PRELIMINARY STATEMENT

The Motion to Dismiss, or in the alternative transfer venue (the "Motion"), filed by Defendants Blake & Uhlig, P.A. and Lauren Fletcher ("Moving Defendants" or "Defendants") should be denied in its entirety.

In a consistent and uniform manner, Defendants advance arguments which contravene applicable authority, the Complaint's allegations or both.  Defendants contend that their conduct in attempting to collect paid medical bills from the Plaintiffs is not covered by the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA"), but their contention belies the statute's plain reading and the only decision of a circuit court directly on point.  Likewise, Defendants argue that they cannot be considered debt collectors under the FDCPA because Plaintiffs' alleged obligation to repay the medical expenses at issue was not in default, but that

argument wholly contradicts the Complaint's allegations, the record it establishes and Defendants' own aggressive collection efforts. Defendants' final argument offered in support of dismissal under Rule 12(b)(6)---that they were attempting to collect a valid debt---is contradicted by the facts of the underlying malpractice action, the rulings of the Philadelphia Court of Common Pleas and Pennsylvania's MCARE Act.

Defendants' alternative motion to transfer[1] fares no better than its Rule 12(b)(6) motion, and in fact, creates complications in its own right to the Defendants' detriment. Its single critical flaw lies in the fact that Defendants have flagrantly ignored and disregarded the FDCPA's venue provisions, which not only prohibit Defendants from pursuing legal action against the Plaintiffs in a federal jurisdiction outside of Philadelphia County, but make Defendants additionally liable under the FDCPA merely for doing so. *See* 15 U.S.C. §1692i(a)(2). Thus, not only is transfer to the District of Kansas neither warranted nor appropriate, but rather, Defendants are in continuing violation of the FDCPA as long as they perpetuate or threaten to perpetuate legal action against the Plaintiffs in that district.

## II.   BACKGROUND

Plaintiffs Timothy and Judith Steele are parents of two children and life-long residents of Philadelphia, Pennsylvania. Due to medical negligence, Mrs. Steele suffered a spinal cord injury that has left her totally disabled and dependent upon opioid medications which does not fully relieve her debilitating pain. Mr. Steele has worked for 29 years as a refrigeration technician on ships docked at the Port of Philadelphia as a member of the International Brotherhood of Boilermakers Union, Local Lodge 13. Mr. Steele obtained health care coverage for his family

---

[1]     With regard to the Motion to Transfer Venue, Defendant Boilermakers National Health & Welfare Fund ("Boilermakers") has joined in the Blake & Uhlig and Fletcher motion.

through the Boilermakers National Health and Welfare Fund ("Boilermakers"). Boilermakers has paid Mrs. Steele's medical bills, some of which are attributable to the alleged negligence.

Plaintiffs filed a medical negligence action in the Philadelphia County Court of Common Pleas for the medical negligence that transpired. Boilermakers attempted to assert its alleged subrogation rights by filing a petition to intervene in that action and argued that the Pennsylvania statute which prohibits a private insurer such as the Boilermakers from asserting a subrogation interest (40 P.S. §1303.508), is preempted by ERISA. By way of an Order, dated May 20, 2008, the Court of Common Pleas of Philadelphia County denied Boilermakers' petition to intervene in the medical negligence action.[2] *See* Def. Br., at Ex. G.

As trial approached, the defendant doctor filed a motion to preclude Plaintiffs from offering evidence at trial of the medical expenses paid by Boilermakers. Feldman Shepherd, counsel for Plaintiffs in the medical negligence action, offered to submit to the Court any arguments the Boilermakers wished to make in opposition to the motion, but the Boilermakers declined that invitation. On May 28, 2009, the Court granted the defendant doctor's motion *in limine* and entered an order precluding Plaintiffs from recovering medical expenses paid by Boilermakers. *See* Def. Br, at Ex. H. Accordingly, Plaintiffs have not recovered any medical expenses in the medical negligence action and there is no basis in law or fact for Boilermakers to assert any subrogation claim against Plaintiffs.

Nevertheless, Boilermakers then hired Blake & Uhlig and Lauren Fletcher (an attorney at Blake & Uhlig) to harass Plaintiffs for months with letters attempting to collect on the non-existent subrogation claim in violation of numerous provisions of the FDCPA. Moving

---

[2]     Notably, rather than pursuing an appeal of this unfavorable ruling by the Pennsylvania state court, Boilermakers commenced a new action against Plaintiffs in Kansas, essentially asking a Kansas court ultimately to afford the same relief that had been denied in Pennsylvania.

Defendants harassment of Plaintiffs culminated with the filing of a meritless lawsuit against Plaintiffs and Feldman Shepherd on June 19, 2009 in the United Stated District Court for the District of Kansas, a jurisdiction that unquestionably has no personal jurisdiction over Plaintiffs or Feldman Shepherd. Boilermakers, working through Blake & Uhlig, further sought to take undue advantage of this foreign forum by then seeking an "emergency" temporary restraining Order from the Kansas court, within days of service of this out-of-state Complaint, and before Plaintiffs were even able to secure counsel in Kansas to represent them.

Plaintiffs here have brought suit against Defendants for violations of the FDCPA, the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 *et seq*. ("FCEUA"), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*. ("UTPCPL") for their harassing collection practices. Specifically, Plaintiffs have claimed that Defendants' violative conduct includes:

- Falsely representing the character, amount and legal status of the alleged debt;

- Threatening to take legal action that was frivolous;

- Using false and deceptive means of communications to attempt to collect the alleged debt;

- Failing to indicate that Defendants were debt collectors, that they were attempting to collect a debt and that all information obtained would be used for that purpose;

- Attempting to collect a subrogation lien from Plaintiffs and their counsel without any legal basis;

- Threatening to sue Plaintiffs and their counsel in a venue other than where the Plaintiffs lived or signed a contract;

- Engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt; and

- Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt.

*See* Pl. Compl., at ¶ 36.   Plaintiffs also seek a declaratory judgment to bring an end to Defendants' erroneous assertion of a subrogation claim over the settlement in the medical negligence action so Plaintiffs can move on with their lives. *See id*., at ¶¶ 39-44.

### III.   LEGAL STANDARD

Universally recognized as a notice pleading standard, Rule 8(a)(2) of the Federal Rules of Civil Procedure calls for a plaintiff filing a complaint in the federal courts to simply provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) ("A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations.") *See also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002) (calling Rule 8 a "simplified notice pleading standard.")

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).[3]   "[T]he threshold level to be met by a plaintiff to withstand a motion to dismiss is very low."  *Smith v. Weeks*, 2002 WL 31750203, at *5 (E.D. Pa. Dec. 9, 2002)

The Third Circuit after *Twombly* has consistently held that in considering a motion to dismiss pursuant to Rule 12(b)(6) the Court shall:

> 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff' and  'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'

---

[3]   From the perspective of a motion for summary judgment, "the incomplete state of discovery alone should . . . precluded summary judgment on the merits. *Miller v. Beneficial Management Corp.*, 977 F.2d 834, 845 (3d Cir. 1992). *See also, Sames v. Gable,* 732 F.2d 49, 51 (3d Cir. 1984) (reversing grant of summary judgment while answers to certain discovery requests remained outstanding). "Where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.' " *Costlow v. United States,* 552 F.2d 560, 564 (3d Cir. 1977).

*Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (quoting *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006) and *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).  *See also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (finding *Pinker* "remains an acceptable statement of the standard" and "finding [*Twombly*] confusing").  "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."  *Twombly*, 550 U.S. at 556 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id*. (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

To the extent *Twombly* or more recently *Ashcroft v. Iqbal*, 129 S. Ct. 937 (2009), impacts the standard of review of a Rule 12(b)(6) motion, these opinions merely clarify  that a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The Third Circuit in *Phillips* noted that *Twombly* "'simply calls for enough facts to raise a reasonable expectation that  discovery will reveal evidence' of the necessary element." 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## IV.   <u>ARGUMENT</u>

**A.   DEFENDANTS ARE COLLECTING ON A NON-EXISTENT DEBT BECAUSE PLAINTIFFS ARE NOT OBLIGATED TO REIMBURSE BOILERMAKERS FOR ANY MEDICAL EXPENSES.**

**1.   Boilermakers Does Not Have A Subrogation Claim Against Plaintiffs Because Plaintiffs Have Not Recovered Any Medical Expenses In Their Medical Negligence Case.**

Boilermakers does not possess a valid subrogation claim against Plaintiffs (the "alleged debt"). Boilermakers Summary Plan Description is clear that Boilermakers is subrogated to Plaintiffs' claims only "to recover any benefits [Boilermakers] paid out because the providing of

benefits is the responsibility and liability of another carrier, organization or individual." *See* Ex. A, Relevant Portions of Boilermakers Summary Plan Description (the "Plan"). In the context of Plaintiffs' medical negligence case, the Court determined that Plaintiffs were not entitled to receive compensation for medical expenses from the medical negligence defendants in that case. Therefore, regardless of whether Moving Defendants agree or disagree with that decision, the fact still remains that the Court determined the medical negligence defendants in that case bore no responsibility to pay for Plaintiffs' medical expenses.  Accordingly, a subrogation claim simply does not exist.

Moving Defendants' obvious dissatisfaction with this result is also legally unfounded. The Medical Care Availability and Reduction of Error Act ("MCARE Act") unambiguously precludes medical negligence defendants from responsibility for compensating an injured plaintiff for his or her medical expenses when those expenses have already been paid by an insurer or benefits plan. *See* 40 P.S. 1303.508(a).[4]  This paragraph has nothing to do with subrogation and certainly has nothing to do with regulating insurance companies or ERISA plans.

---

[4]    Subsection (a) of the MCARE Act states "**General Rule –** Except as set forth in subsection (d), a claimant in a medical professional liability action is precluded from recovering damages for past medical expenses or past lost earnings incurred to the time of trial to the extent that their loss is covered by a private or public benefit or gratuity that the claimant has received prior to trial." 40 P.S. 1303.508(a).

Subsection (d), which is referenced in the statutory provision sets forth the exceptions, that would apply here, including: "(1) Life insurance, pension or profit sharing plans or other deferred compensation plans, including agreements pertaining to the purchase or sale of business; (2) Social Security benefits; (3) Cash or medical assistance benefits which are subject to repayment to the Department of Public Welfare; (4) Public benefits paid or payable under a program which under federal statute provides for right of reimbursement which supersedes state law for the amount of benefits paid from a verdict or settlement." 40 P.S. 1303.508(d).

Recognizing this reality, the Moving Defendants then stretch the limits of plausibility by claiming that Plaintiffs are responsible to reimburse the Boilermakers even if their settlement did not recover any medical expenses.  Moving Defendants do this by relying on a truly bizarre interpretation of the applicable portion of the Plan.   The Boilermakers contend that the Plan confers a subrogation claim when a person receives "compensation of any kind", irrespective of whether that compensation is for medical expenses paid by the Boilermakers, as opposed to on account of any other loss or harm.[5] *See* Ex. A. Contrary to this interpretation, the provision goes on to clarify that the "compensation of any kind" could mean a judgment, settlement or other means. *Id.*

Of course, the logical reading of this provision simply explains to the plan member that he or she will be required to reimburse the Boilermakers if compensation is received for medical expenses regardless of the context. Moving Defendants, however, absurdly claim that this provision requires the plan member to reimburse Boilermakers even if he or she receives no compensation for medical expenses.  This interpretation flies in the face of traditional principles of subrogation.

Subrogation is classically an equitable remedy, contingent upon preventing "double recovery" by the insured. If the insured does not recover expenses which the Plan paid, there is no cognizable reason to provide the insurer with a subrogation right. *See Waupaca Foundry, Inc. v. Gehlhausen*, 104 F. Supp. 2d 1052. (S.D. Ind. 2000) ("A Plan ought not to be permitted to

---

[5]      The applicable provision in the Plan states:

> If the Fund pays benefits on behalf of you and/or any of your eligible dependents, for illness or injury for which you and/or your eligible dependents receive compensation of any kind, whether by judgment, compromise, settlement or otherwise, the Fund shall be subrogated to the extent of its benefits paid…

*See* Ex. A.

conscript its participant into becoming a *de facto* collection agency");   *ACS/Primax v. Polan*, 2008 WL 5213093, *7 (W.D. Pa. Dec. 12, 2008) ("[Insured] did not recover any "incurred expenses" and, therefore, the Plan is not entitled to be reimbursed for the medical expenses it paid.").

Fundamentally, subrogation provisions of ERISA plans must be read against "a background of common-sense understand and legal principles." *Wal-Mart Stores, Inc. Associates Health and Welfare Plan v. Wells*, 213 F.3d 398, 402 (7th Cir. 2000). As the 7th Circuit noted, by reading a Plan to conclude that the Plan is entitled to reimbursement for expenses which an insured has not in fact recovered, such a conclusion could leave the plan member worse off than if he or she had not sued to recover damages in the first place. *Id.*   As such, the 7th Circuit reasoned that such an undesirable result might well deter a suit, and that such a reading of plan language should be avoided. *Id.*   Other Courts have similarly concluded that any subrogation provisions under a plan must be read narrowly to preclude a plan from recovering when the settlement or judgment proceeds were not attributable, or related, to medical expenses paid by a plan. *See Wright v. Aetna Life Ins. Co*, 110 F.3d 762, 764-65 (11th Cir. 1997); *Cooper Tire and Rubber Co. v. St. Paul Fire and Marin Ins. Co,*. 48 F.3d 365, 371-72 (8th Cir. 1995); *Janssen v. Minneapolis Auto Dealers Benefit Fund*, 2004 WL 3019792, *6-8 (D. Minn. Dec. 30, 2004), *aff'd* 447 F.3d 1109 (8th Cir. 2006); *Hammane v. Central States, Southeast and Southwest Areas Heath and Welfare Fund*, 11 F. Supp.2d 1065, 1069-70 (D. Minn 1998).

Although the instant interpretation by Defendants in this case patently appears to defy the common sense approach that courts require, at best, one could only conclude this provision is ambiguous. Nonetheless, an ambiguous provision in the Plan does not grant Defendants authority to make up any interpretation that they please. *See Heasley v. Beldon and Black Corp.*, 2 F.3d

1249, 1257-58 (3d Cir. 1993) (finding ambiguity in an ERISA plan must be construed and resolved in favor of the insured).  Therefore, without a subrogation claim, Defendants are clearly attempting to collect on a debt that Plaintiffs do not in fact owe.

**2.   ERISA Does Not Preempt The Applicable MCARE Provision In This Case.**

Defendants' arguments that ERISA would preempt the applicable MCARE provision (subsection (a)) discussed above is likewise misguided. Any preemption analysis begins with the presumption that "Congress does not intend to supplant state law." *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Company*, 514 U.S. 645, 654 (1995). In *Travelers*, the Supreme Court significantly narrowed the reach of ERISA preemption by abandoning an approach grounded in strict textualism in favor of a more nuanced approach. *See, e.g., Joyce v. RJB Nabisco Holding Corp*., 126 F.3d 166, 173 (3d Cir. 1997) (recognizing that *Travelers* Court refused to read ERISA preemption provisions literally because to do so "would provide no stopping point for ERISA preemption."). Therefore, in order to determine whether a state statute related to a covered employee benefits plan so as to result in its preemption under ERISA, the Courts have outlined a two part test which requires a determination as to whether the law has a "connection with" or a "reference to" an ERISA plan. *Id*. at 656. *See also Shaw v. Delta Airlines, Inc*, 463 U.S. 85, 96-97 (1983).  In *Travelers*, for example, the Court found that the state statute at issue, which imposed surcharges on patients and HMOs regardless of the source, did not make "reference to" any ERISA plan. 514 U.S. at 656. Since the applicable portion of the MCARE statute, like the statute at issue in *Travelers*, does not make any "reference to" an ERISA plan no preemption exists.

Only those statutes which are designed to impact employee benefits specifically, and/or which single out those plans for special treatment, or where "the rights or restrictions [created]

are predicated on the existence of such a plan" would be found to "relate to" an employee

benefits plan so as to trigger preemption. *United Wire, Metal and Machine Health Welfare Fund

v. Morristown Mem. Hosp.*, 995 F.2d 1179, 1192. (3d Cir. 1993). (New Jersey Statute is not

preempted where it had only an indirect effect on potential ERISA plans); *California Division of

Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 325 (1997)

(holding that California wage statute neither made "reference to" nor had "connection with"

ERISA plan, and did not "relate to" ERISA plan, and was not preempted by ERISA).  Moreover,

"preemption does not occur if the state law has only a tenuous, remote or peripheral connection

with covered plans, as is the case with many laws of general applicability." *Travelers,* 514 U.S.

at 661 (*quoting District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125, 130

n. 1 (1992) (internal quotation marks and citations omitted).

The MCARE Act is a law of general applicability relating to medical negligence lawsuits,

which makes no reference to ERISA, and whose operation is independent of the existence of any

ERISA plan.[6]  As such, and in accordance with the decisions in *Travelers* and *United Wire*,

Subsection (a) of the MCARE Act cannot be said to make "reference to" an ERISA plan for

purposes of preemption.  *See also Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003)

(finding that to "regulate insurance" the statute must be "specifically directed toward the

insurance industry: laws of general application that have some bearing on insurers do not

---

[6]      The MCARE Act in its Declaration of Policy states that the purpose of the statute is: " (1)
to ensure that medical care is available in the Commonwealth through a comprehensive and high
quality health care system; (2) to ensure access to a full spectrum of hospital services and to
highly trained physicians in all specialties must be available across this Commonwealth; (3) to
assure that medical professional liability insurance is obtainable at an affordable and reasonable
cost in every geographic region of this Commonwealth; (4) to afford a prompt determination and
fair compensation to persons who have sustained injury or death as a result of medical
negligence by a health care provider; (5) to identify problems and implement solutions that
promote patient safety and to reduce and eliminate medical errors." 40 P.S. §1303.102.  Nowhere
does this declaration refer to the regulation of insurance.

11

qualify.") (*citing Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)).   Any connection the

MCARE Act hypothetically may have to ERISA is far too tenuous and remote to be preempted.

As Chief Judge Ambrose observed in addressing similar issues:

> Notably, while ERISA broadly preempts "any and all state laws" that "relate to any employee benefit" . . . Pennsylvania law governing the nature of medical malpractice actions does not "relate to" an ERISA plan.

*Polan*, 2008 W.L. 5213093 at *7 n. 6.

Recognizing that subsection (a) clearly could not be preempted by ERISA, Defendants'

erroneously claim that subsection (c) and subsection (a) of the MCARE Act are one provision.

Even a cursory reading of the statute reveals that these are two separate provisions operating

independently from one another.   *See* 1 Pa. C.S.A. §§ 1921(a) (requiring a statute to be read to

give effect to all its provisions).   Moreover, Defendants have not established that subsection (c)

even has a tangible role in this lawsuit given that Defendants did not have a subrogation claim in

the underlying medical negligence lawsuit as discussed above.

Defendants exclusive reliance on *FMC v. Holliday*, 498 U.S. 52 (1990) is similarly

inapposite in connection with this issue because a subrogation claim was found to actually exist

in *Holliday*.   *See Holliday*, 498 U.S. at 56.[7]   The Motor Vehicle Financial Responsibility Law

---

[7]       Defendants do not discuss Subsection (b) of MCARE Act in their original briefing, which states at a plaintiff shall not be permitted to "recover for [medical] expenses as a part of any verdict except  to the extent that the claimant remains legally responsible for such payment."  To the extent  Defendants intend to argue in the future that subsection (b) bridges subsection (a) and (c) together,   such an argument is also incorrect.   Subsection (b) relates exclusively to obligations that a plaintiff may have for unpaid medical services performed which have not been paid by a benefits provider. ERISA plans do not have not legal remedy to recover for benefits paid. *See Sereboff v. MidAtlantic Medical Services, Inc.* 546 U.S. 164 (2006).   Furthermore, subsection (b) cannot be read as an exception to subsection (a) that nullifies its effect because the statute specifically identifies exceptions to subsection (a) in subsection (d). *See* 1 Pa. C.S.A. §§ 1921(b), 1903(a) (requiring that courts construct the words of a statute according to their plain meaning). Defendants circumstance notably do not invoke any of the exceptions identified in subsection (d).

("MVFRL") at issue in *Holliday* notably did not contain a provision that precluded a plaintiff from recovering medical expenses paid by an insurer or benefits plan.  Additionally, the MVFRL is a statutory scheme specifically designed to regulate insurance policies and plans in Pennsylvania.  The provisions of the MVFRL relate expressly to insurance and regulate the conduct of insurers doing business in Pennsylvania by requiring carriers to offer certain coverages, setting forth the manner in which medical expenses are to be calculated and reimbursed by insurers, setting minimum liability limits for automobile policies, and detailing the very language which must be contained in automobile insurance policies. By contrast, the MCARE Act controls and defines the cause of action for medical malpractice in Pennsylvania.  It contains the evidentiary requirements for expert testimony, limits the nature of punitive damages, and defines the manner in which compensatory damages are calculated and paid.  Unlike the MVFRL, the MCARE Act neither arises from nor relates to insurance or any employee benefit plan, and therefore, this state statutory scheme is not preempted by ERISA.

When one considers the tenor of Defendants' arguments on this issue, it is clear that Defendants are inappropriately asking this Court to rewrite the MCARE Act as opposed to interpreting it.   Rewriting the law, however, is not the function of the Court in this case. Furthermore, a plain language reading of the MCARE Act proves that ERISA does not preempt the applicable provisions at issue.

**B.      DEFENDANTS' CONDUCT IN ATTEMPTING TO COLLECT THE ALLEGED DEBT FROM PLAINTIFFS AND THEIR COUNSEL IS ACTIVITY THAT IS REGULATED BY THE FDCPA.**

Defendants argue that even assuming, *arguendo*, that the Plaintiffs do not owe the alleged debt, an FDCPA action may not lie. The premises for this argument are Defendants' incorrect contentions that subrogation liens are not the type of debts that the FDCPA covers, and that

Defendants cannot be considered debt collectors because the alleged debt was not in default at the time they attempted to collect it.  These premises are demonstrably erroneous.

### 1.  An Alleged Subrogation Claim May Constitute A "Debt" Under the FDCPA.

Contrary to Defendants' contentions, an alleged subrogation claim may constitute a "debt"[8]  under the FDCPA.  In reviewing the FDPCA's definition of debt, the Third Circuit found that it is very broad:

> the plain meaning of section 1692a(5) indicates that a "debt" is created whenever a consumer is obligated to pay money as a result of a transaction whose subject is primarily for personal, family or household purposes. No "offer or extension of credit" is required.

*Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 401 (3d Cir. 2000); s*ee also Romea v. Heiberger & Assocs.*, 163 F.3d 111, 114 (2d Cir. 1998); *Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir.1997); *Bass v. Stolper, Koritzinsky, Brewster & Neider*, 111 F.3d 1322, 1325-26 (7th Cir.1997).

As set forth in the Complaint, Plaintiffs have alleged that the money Defendants sought to collect from Plaintiffs related to payments that Boilermakers paid on behalf of the Steeles in connection with personal medical expenses that arose as a result of an injury suffered by Ms. Steele due to medical negligence. *See* Compl., at ¶ 9.  The Complaint further alleges that the payments arose in connection with a transaction whose subject was personal, family or household purposes.  *Id*.  Thus, the allegations of the Complaint sufficiently establish that the FDCPA applies to the alleged debt Defendants have sought to collect from the Plaintiffs.

---

[8]      Under the FDCPA, a "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family of household purposed, whether or not such obligation has been reduced to judgment." 28 U.S.C. §1692a(5).

Furthermore, in employing a reading of the definition of debt consistent with that of its sister circuits to a situation virtually identical to the case at bar, the Fifth Circuit specifically held that a subrogation claim or lien may constitute a "debt" under the FDCPA. *Hamilton v. United Healthcare of Louisiana, Inc.* 310 F.3d 385 (5th Cir. 2002).

In *Hamilton*, an automobile accident victim who was insured under a group health plan offered through his father's employer sought to recover for alleged violation of FDCPA in connection with group health insurer's attempts to enforce its alleged contractual subrogation rights. *See id.* at 387. The Fifth Circuit, after conducting a detailed analysis of the statutory meaning of "debt" and analyzing the prevailing case law at the time concluded "We cannot avoid the inescapable conclusion that the plain meaning of "debt" encompasses the funds owed in this case." *Id.*

The Fifth Circuit was no maverick in *Hamilton*. Courts from around the country have consistently held that debts arising from medical bills or insurance payments fall within the FDCPA's definition of debt. *See Heintz v. Jenkins,* 514 U.S. 291, 291 (1995) (finding attorney violated FDCPA in connection with collection of insurance claim); *Pipiles v. Credit Bureau, Inc.* 886 F.2d 22, 23-4 (2d Cir. 1989) (finding defendant violated FDCPA in connection with collecting medical bills); *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 524-25 (E.D. Pa. 1996) (finding law firm violated FDCPA in connection with collecting medical bills); *Correa v. Rowley*, 1997 WL 714858, *1 (E.D.La., Nov. 14, 1997) (finding defendant violated FDCPA in connection with collecting insurance premiums.).

Defendants' sole reliance on *Garner v. Augustine, Kern & Levens Ltd.*, 1994 WL 48589 (N.D. Ill. 1994) is misplaced. Aside from being an unpublished opinion, the Fifth Circuit in

15

*Hamilton* specifically rebuked the conclusion of the District Court in that case finding that "*Garner* 's interpretation of the definition of "debt" is too narrow." *Id.* at 392.

Moving Defendants' reliance on *Pollice* is similarly misguided. Contrary to Moving Defendants arguments, *Pollice* does not support Moving Defendants' arguments. The Third Circuit's conclusions in *Pollice* that an obligation to pay property taxes is not a "debt" under the FDCPA provides no impediment to Plaintiffs' claims here. Defendants have failed to explain how a property tax obligation and a subrogation claim bear any resemblance to one another other than to summarily remark that *Pollice* was mentioned in the dissenting opinion in *Hamilton*. *Pollice* actually supports a broad interpretation of what constitutes a debt. *See* 225 F.3d 379 (applying "the broader view that the FDCPA applies to all obligations to pay money which arise out of consensual consumer transactions, regardless of whether credit has been offered or extended.")

Defendants' hasty attempt to distinguish *Hamilton* fails. Defendants assert in a footnote that the circumstances of this case are distinguishable from *Hamilton* because it involves an ERISA plan. What Defendants fail to note is that the plan in *Gardner* was also an ERISA plan, and *Gardner* is a case which the *Hamilton* court unambiguously refused to adopt in any respect. Additionally, Moving Defendants similarly fail to appreciate that this argument is not appropriate because Boilermakers does not even have a valid subrogation claim in this instance (*See* Pl. Argument, Sec. A., *supra*) making Defendants actions in collecting this non-existent debt precisely the type of misconduct that the FDCPA was enacted to prevent.

**2.  Blake & Uhlig and Ms. Fletcher Are "Debt Collectors" Under the FDCPA.**

Defendants' argument that they cannot be considered debt collectors under the FDCPA because the alleged debt was not in default contradicts the Complaint's allegations.

Plaintiffs have adequately alleged that Moving Defendants, as part of their usual business activities regularly attempt to collect debts owed or alleged to be owed to their clients, and that they were retained by Boilermakers to collect from Plaintiffs what Defendants claim was a *defaulted* subrogation lien in default in the amount of $534,876.50. Compl., at ¶¶ 5, 8 & 9. Moreover, the Complaint alleges that Plaintiffs and their counsel communicated to Defendants that they did not owe the alleged debt, would not pay it, and that notwithstanding those communications, Defendants persisted in a series of harassing and threatening collection activities. Compl., at ¶¶9-18. These allegations more than establish that alleged debt was in default at the time of Defendants' collection activities, and at this stage, must be accepted as true.

Moving Defendants effectively concede that they meet with definition of debt collectors under the FDCPA if they are not excluded from coverage by the FDCPA's loan servicing exception identified in FDCPA section 1692a(6)(F)(iii).[9] Given the fact that the alleged debt was in default, this exception (which applies to some types of loan servicers) does not apply on its face.

Moreover, Moving Defendants are not the type of entities the exception was intended protect. The servicing exception was clearly intended to protect organizations that service outstanding debts such as mortgages or student loans. *See, e.g., Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.") (*citing* S.Rep. No. 95-382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S. Code

---

[9]   The applicable exception states that the term debt collector "does not include any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity. . . concerns a debt which was *not in default* at the time it was obtained by such person." 15 U.S.C. §1692a(6)(F)(iii)(emphasis supplied).

Cong. & Ad.News 1695, 1698);  *Brumberger v. Sallie Mae Servicing Corp,* 84 Fed. Appx. 458
(5th Cir. 2004) (finding that student loan servicer was not "debt collector" in order to support
borrower's claim under FDCPA).[10]  Moving Defendants certainly do not fit this description nor
do they seriously argue that they do.[11]  Additionally, debt collectors who have tried to
inappropriately pass themselves off as "servicers" have been rebuked by the Courts.  *See, e.g.,*
*Hartman*, 191 F.Supp.2d  at 1042 (W.D.Wis. 2002) (finding debt collector did not meet statutory
exception under §1692a(6)(F)(iii) by claiming it was engaging in "pre-collection billing
services.").

Moving Defendants' argument in this regard also rests on a fundamentally flawed
presumption about the time in which the alleged debt at issue in this FDCPA case went into
"default."  Pursuant to the specific terms of the Plan, a subrogation claim only exists when
Plaintiffs are "compensated" for medical expenses.  *See Hartman v. Meridian Financial*
*Services, Inc.*, 191 F. Supp.2d 1031, 1042 (W.D.Wis. 2002) (holding defendant to terms of its
contract with plaintiff in connection with determining when "default" occurred pursuant to
§1692a(6)(F)(iii)).  Putting aside the fact that Plaintiffs' were never in fact compensated for their
medical expenses for the moment, the alleged debt simply did not exist until Plaintiffs settled
their medical negligence suit for a cash sum.  Plaintiff also has appropriately alleged that Moving
Defendants engaged in a series of harassing, threatening and unlawful collection efforts in an

---

[10]     *See also  De Mayo, FTC Informal Staff Letter,* May 1, 2000 ("the [debt-not-in-default]
exemption was aimed at entities such as mortgage servicers that obtain debts as soon as the debts
are incurred and are primarily in the business of accepting timely payments from consumers....
Whether a creditor "consider[s] a debt in default" has no bearing on whether the debt is truly in
default.")

[11]     Blake & Uhlig and Ms. Flectcher's reliance on *Hamilton v. Trover Solutions, Inc.*, 2003
WL 21105100 (E.D. La. May 13, 2003) is similarly inapposite. The Court in that case also found
that the defendant clearly was "in the business of servicing outstanding debt." *See id.* at *4.

attempt to obtain subrogation monies that they are not owed despite having been advised by Plaintiffs' counsels' admonitions that the claims are baseless.   *See* Pl. Compl., at ¶ 13-18. Moving Defendants were thus aware that Plaintiffs were refusing to pay.   Accordingly, the debt at issue in this case was effectively in "default" from the moment the debt came into existence.

## C.   THE EASTERN DISTRICT OF PENNSYLVANIA IS THE ONLY PROPER VENUE FOR THIS LAWSUIT.

### 1.   Plaintiffs' Choice of Venue Is Proper.

There is nothing inappropriate about Plaintiffs' selection of the Eastern District of Pennsylvania to bring this lawsuit. If anything, due to the FDCPA's specific venue provisions, the Eastern District of Pennsylvania is the only venue where the disputes between Plaintiffs and Defendants should be resolved.

The FDCPA specifically mandates that "any debt collector who brings any legal action on a debt against any consumer shall . . . bring such action only in the judicial district . . .  in which the consumer signed the contract sued upon or in which such consumer resided at the commencement of this action." 15 U.S.C. §1692i. *See also Addison v. Braud*, 105 F.3d 223, 224 (5th Cir. 1997) ("While section 1692i is primarily concerned with ensuring collection actions are filed in a venue convenient to the debtor, it follows that filing in a court which is not only not the proper venue but which is also without jurisdiction over the debtor also violates that section.")  *Scott v. Jones*, 964 F.2d 314, 318 (4th Cir. 1992) ("finding that attorney was "debt collector" and subject to venue provisions of the FDCPA").

Plaintiffs reside in Philadelphia County. They never signed any contract with Boilermakers or Defendants in Kansas or anywhere other than Philadelphia County. Thus, under the FDCPA Defendants may only bring legal action against them in this Court.  The Complaint alleges that Defendants threatened legal action in the District of Kansas, and Defendants now

admit they have sued Plaintiffs there. *See* Compl., at ¶17. Thus, Defendants have admitted to violating FDCPA section 1681i. Their persistent attempts to force Plaintiffs into that forum can only be construed as an ongoing violation of the FDPCA.

Even assuming that the FDCPA did not apply, Defendants' venue arguments fail. Defendants have not claimed that this forum lacks personal jurisdiction over them. Defendants also have not claimed that venue in this forum is improper pursuant to 28 U.S.C. §1391(b). Defendants' only basis for seeking transfer of this lawsuit is pursuant to 28 U.S.C. §1404(a), which is highly inappropriate given the FDCPA's venue requirements explained above.

The Third Circuit has also repeatedly found that "[i]t is black letter law that <u>a plaintiff's choice of a proper forum is a paramount consideration</u> in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (emphasis added). *See also Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995) ("the plaintiff's choice of venue should not be lightly disturbed.").  Adding to this presumption, Plaintiffs are residents of the State of Pennsylvania and virtually all transactions surrounding the collection of the alleged debt occurred in the State of Pennsylvania.  Indeed, the only reason Defendants are able to provide in support of transferring the case to the District of Kansas is that they happen to reside there. This reason alone, however, is not a legitimate reason to transfer venue.  *Van Dusen v. Barrack,* 376 U.S. 612, 633-34 (1964) ("There is nothing ... in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue.")

**2.   Defendants Reliance on the "First Filed Rule" Is a Red Herring.**

The fact that Defendants simultaneously filed a lawsuit in the District of Kansas (wrongfully claiming that they are entitled to a reimbursement pursuant to a non-existent subrogation claim) does not support transfer of the instant action to the Kansas as well. Defendants' claim that transfer is proper because of the alleged "first-filed rule" is a total red herring.  Defendant have failed to point out that "the first-filed rule dictates that "in cases of federal concurrent jurisdiction involving the same parties and same issues, the court of first-filing must proceed to decide the matter." *Koresko v. Nationwide Life Ins. Co.*,  403 F.Supp.2d 394, 399 (E.D.Pa. 2005)(emphasis added).  Defendants notably omitted from their brief that they have not even successfully established personal jurisdiction over Plaintiffs in the District of Kansas. Accordingly, a fundamental prerequisite to the application of "first filed rule" does not even exist in this case.  Plaintiffs cannot be forced to leave a forum where venue is properly established in order to litigate this matter in a forum which personal jurisdiction over them has not even been established.

Even if one puts aside the fact that personal jurisdiction over Plaintiffs does not exist in the District of Kansas, Defendants also fail to recognize that Plaintiffs' claims in the instant action do not involve the same issues.   The "first filed rule" contemplates identical countervailing claims brought in different jurisdictions. *See, e.g., E.E.O.C. v. Univ. Of Pa.*, 850 F.2d 969 973-74 (3d Cir. 1988) (Parties each brought a separate actions to enforce and to quash subpoenas).  Plaintiffs' claims against Defendants for violations of the FDCPA have no relation the claims made in the action in the District of Kansas under ERISA.   Plaintiffs' declaratory judgment action in the instant lawsuit also has nothing to do with ERISA.  Plaintiffs are seeking

declaratory judgment under the MCARE Act for the reasons explained above. As such, there is not even a nexus of issues to invoke the "first filed rule" in this case.

Defendants also have conveniently failed to explain to the Court that this action and the action currently in the District of Kansas were filed within one week of each other.[12]  For all practical purposes these lawsuits were filed at exactly the same time.  Accordingly, deference should not be granted the District of Kansas action based on such a trivial disparity in the time that these two actions were initiated.

Defendants' decision to litigate against Plaintiffs in a jurisdiction thousands of miles away from where they live in a state that they have never even visited likewise raises questions as to whether the Defendants filed suit in the District of Kansas in order to create an undue burden on Plaintiffs and preempt Plaintiffs imminent filing of a Complaint against Defendant for their harassing debt collection tactics and inappropriate demands for reimbursement.  As the Third Circuit explained in *Univ. of Pa*:

> Under [defendant's] view, the first-filed rule is a firm legal principle requiring dismissal of the second-filed suit without regard to the circumstances of the case. We disagree . . . . courts have consistently recognized that the first-filed rule is not a rigid or inflexible rule to be mechanically applied . . . and forum shopping have always been regarded as proper bases for departing from the rule. . .  and when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum.

850 F.2d at 976 -977 (citations omitted).

---

[12]     Defendants filed the action in the District of Kansas on June 18, 2009. Plaintiffs filed the instant action on June 24, 2009.

## V.    <u>CONCLUSION</u>

For the forgoing reasons, Plaintiffs respectfully requests that this Court deny Blake & Uhlig and Lauren Fletcher's motion to dismiss in its entirety.   Plaintiffs further respectfully requests that this Court deny Boilermakers, Blake & Uhlig and Lauren Fletcher's motion to transfer venue as well.

Respectfully Submitted,

**FRANCIS & MAILMAN, P.C.**

BY:    <u>*/s/ James A. Francis*</u>
JAMES A. FRANCIS
GREGORY GORSKI
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

Dated: September 16, 2009

**EXHIBIT A**

# Boilermakers
# National Health
# and
# Welfare Plan



# PLAN M

**EFFECTIVE JANUARY 2000**

31

## SUBROGATION

### What is Subrogation?

In addition to the Coordination of Benefits provision, the Plan also has a "Subrogation" provision.

Subrogation of claims applies to situations where the Fund has the right to recover any benefits it has paid out because the providing of benefits is the responsibility and liability of another carrier, organization or individual.

### Subrogation Rights

If the Fund pays benefits on behalf of you and/or any of your eligible dependents, for illness or injury for which you and/or your eligible dependent receive compensation of any kind, whether by judgment, compromise, settlement or otherwise, the Fund shall be subrogated to the extent of its benefits paid (including any amounts credited to deductibles) to the individual's recovery of compensation for his/her damages from any person and/or insurance or other benefits carrier and/or any organization.

**NOTE: IN ANY STATE WHERE NO-FAULT INSURANCE LAWS APPLY, BENEFITS OF THIS PLAN SHALL BE PAYABLE ONLY AFTER NO-FAULT INSURANCE BENEFITS ARE PAID, REGARDLESS OF THE STATE'S NO-FAULT LEGISLATION AND/OR INSURANCE POLICIES THEREUNDER.**

**YOU WILL BE RESPONSIBLE FOR PROTECTING THE FUND'S RIGHT TO SUBROGATE IN THE FOLLOWING RESPECTS:**

1. To immediately notify the Fund in writing whenever you believe or first learn any person, insurance or benefits carrier, or any other organization is or may be responsible, or has agreed or may agree to pay, either wholly or in part, for any damages you and/or your eligible dependent has incurred or may incur as a result of any illness or injury. Damages shall include, but are not limited to, any property damage and/or personal injury and/or medical expenses.

2. To immediately notify the Fund in writing, whenever a representative of any other insurance or benefits carrier, or any other organization or individual contacts you and/or your eligible dependent, or your representative in order to settle, adjust or in any way resolve your and/or your eligible dependent's claim for damages.

A claim includes any cause of action filed in any court and/or any verbal or written demand made by you, your eligible dependent or representative, for compensation for damages the individual has incurred or may incur as a result of any illness or injury.

3. To refuse any settlement, adjustment or resolution of your and/or your eligible dependent's claim for damages until you have received the Fund's written authorization allowing you to accept a settlement, adjustment or resolution offered by any person, insurance or benefits carrier, or any other organization.