IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY STEELE and  :  | |
| JUDITH STEELE, h/w  :  | No. 2:09-cv-02837-PBT |
| *Plaintiffs*  :  | |
| v.  :  | |
|   :  | |
| BLAKE & UHLIG, P.A.;  :  | |
| LAUREN FLETCHER; and  :  | |
| BOILERMAKERS NATIONAL  :  | |
| HEALTH AND WELFARE FUND,  :  | |
| *Defendants*  :  | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS
BLAKE & UHLIG, P.A. AND LAUREN FLETCHER TO DISMISS PLAINTIFFS'
COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER**

**I.     The Motion to Dismiss should be granted.**

   **A.     This Honorable Court must defer to the Fund's reasonable interpretation of its
          reimbursement rights under the Plan.**

The Steeles raise baseless arguments in their attempt to evade the clear reimbursement right of the ERISA Plan against their substantial recovery in the underlying medical malpractice, the total amount of which the Steeles refuse to disclose. The Steeles fail to discuss the controlling standard of review for this Court to determine if the ERISA Fund properly interpreted the reimbursement provisions in the Plan. In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that a fund's interpretation of its plan's language is normally reviewed under a deferential standard. Specifically, when the plan allows the fund to interpret it and a fund has in fact interpreted the instrument, such an interpretation will be upheld if it reasonable. *Moench v. Robertson*, 62 F.3d 553, 567 (3d Cir. 1995). Here, the Fund, under the Plan, is granted the power to interpret the language of this instrument. Furthermore, the Fund

reasonably interpreted the Plan's language to establish that it has a right to reimbursement from any monies the Steeles recovered in the medical malpractice action.

The Steeles assert the Fund does not have a right to reimbursement pursuant to the Summary Plan Description but omit the dispositive language in that document:

> If the Fund pays benefits on behalf of you and/or any of your eligible dependents for illness or injury for which you and/or your eligible dependent receive compensation of any kind, whether by judgment, compromise, settlement or otherwise, the Fund shall be subrogated to the extent of its benefits paid (including any amounts credited to deductibles) to the individual's recovery of compensation for his/her damages from any person and/or insurance or other benefit carrier and/or organization.

This language (also in the Plan itself), particularly the language "compensation of any kind", makes clear that a right of reimbursement from any compensation is allowed. The Steeles can only say that this language applies to "expenses regardless of context", a totally vague statement which fails to give any meaning, much less the appropriate meaning, to that language.[1]

### B. The MCARE Act's anti-subrogation provision is preempted by ERISA because it "relates to" an employee benefit plan.

In support of their claim that the Supreme Court "significantly narrowed the reach of ERISA preemption" Plaintiffs cite *N.Y. State Conf. v. Travelers Ins. Co.*, 515 U.S. 645, 655-56

---

[1] Plaintiffs cannot cite any case holding that an ERISA plan may not seek reimbursement against all monies collected, regardless of designation, when a plan has similar language and the administrator so interprets the plan. In particular, the four cases the Steeles cite in order to assert that subrogation provisions must be construed narrowly involve different language in both the plan and summary plan description than the dispositive provision of the Plan in this case. Furthermore, Plaintiffs' reliance on *ACS/Primax v. Polan*, 2008 WL 5213093, at *7 n.6 (W.D. Pa. 2008), is entirely misplaced. The pertinent portion of the *Polan* decision focused on whether ERISA preempted Pennsylvania common law as it related to standing of a minor's parents to bring an action to recover medical expenses; the case is entirely unrelated to the MCARE Act and its anti-subrogation provision.

(1995).² In *Travelers* the Court reaffirmed the broad proposition that a state law "relates to" an employee benefit plan³ and is subject to ERISA's preemption clause if it has a connection with or reference to such a plan. *Id*. at 656.⁴ Under this holding, courts must examine the "objectives of the ERISA statute … as well as … the nature of the effect of the state law on ERISA plans" to determine if a state law is preempted. *Egelhoff v. Egelhoff, ex rel. Breiner*, 532 U.S. 141, 147 (2001). The broad preemption clause is consistent with the objective of ERISA to "establish the regulation of employee … benefit plans as exclusively a federal concern" to ensure such plans are "subject to a uniform body of benefit laws … [and not] conflicting directives among States or between States and the Federal Government." *Travelers*, 514 U.S. at 656-57 (internal citations omitted).

In arguing that ERISA does not preempt the MCARE Act's anti-subrogation provision, the Steeles ignore the standard established in *Travelers*. Under *Travelers*, the MCARE Act's anti-subrogation provision does have a connection with employee benefit plans because application of

---

² The Steeles also inappropriately cite *FMC Corp. v. Holliday*, 494 U.S. 52 (1990) by asserting that "a subrogation claim was found to actually exist" in that decision. This opinion does not even address that issue.

³ Plaintiffs continually mischaracterize the Boilermakers Fund as a "private insurer". There is no basis for this disingenuous statement. The record is clear that the Fund is a self-funded employee benefit plan governed by ERISA, and not a private insurer.

⁴ *See Travelers*, 515 U.S. at 656 ("A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."); s*ee also Young v. Reconstructive Orthopaedic Assoc., II, P.C.*, 2005 WL 627796, at *9 (E.D. Pa. 2005) ("In *Travelers*, the Court did not abandon the 'relates to' test, rather, if further clarified the test to address a particular state statute.").

this law to such plans would subject them to conflicting state subrogation statutes.[5] This is what would occur, as described in Moving Defendants' Memorandum.

The Steeles also argue that the MCARE Act is not preempted because it "does not make any reference to ERISA". However, a state statute is subject to ERISA preemption if it "has a connection with *or* reference to such a plan. . . ." *Smith v. Continental Cas. Co.*, 303 F. Supp. 2d 560, 563 (E.D. Pa. 2002) (emphasis added). This standard is stated disjunctively because either is sufficient to trigger ERISA's preemption provision. *Travelers*, 514 U.S. at 656. Therefore, the Steeles' assertion that the Act only fails to reference an employee benefit plan is insufficient to avoid ERISA preemption. Furthermore, the Steeles improperly focus only on subsection (a) of § 1308.508. To the contrary, part of the Act's anti-subrogation language, subsection (c), is clearly connected with and indeed references employee benefit plans.[6] Indeed, applying similar logic, our Court of Appeals held in *Levine v. United Healthcare Corp.*, 402 F.3d 156, 164 (3d Cir. 2005), that ERISA preempted a similar New Jersey anti-subrogation statute.

In summary, no FDCPA violation is pled because ERISA preempts the MCARE Act's anti-subrogation language, allowing the Fund and Moving Defendants to pursue reimbursement.[7]

---

[5] *See Young v. Reconstructive Orthopaedic Assoc., II, P.C.*, 2005 WL 627796, at *8 (E.D. Pa. 2005) (indicating that ERISA preempts "those laws that undermine the nationally uniform administration of employee benefit plans.").

[6] *See* 40 P.S. § 1303.508(c): "[T]here shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to a public or private benefit covered in subsection (a)." Ironically, elsewhere in their Memorandum, Plaintiffs rely on subsection (c) to claim that the Fund cannot enforce its reimbursement right under the Plan. *See also* 40 P.S. § 1303.508(d)(4): "Public benefits paid or payable under a program which Federal statute provides for right of reimbursement which supersedes State law for the amount of benefits paid from a verdict or settlement."

[7] Due to page limitations, Moving Defendants will not further address the points that neither a "debt" nor "debt collectors" under the FDCPA are involved here, but simply note that Plaintiffs have not provided

**II.     In the alternative, this matter should be transferred to the District of Kansas.**

**A.     Defendants properly filed the Fund's claim in Kansas under ERISA.**

The Steeles seek to avoid transfer by incorrectly claiming that the Kansas Action was filed in an improper venue and without personal jurisdiction. Ironically, Plaintiffs have not claimed that venue was improper due to the FDCPA in their Motion to Dismiss or Transfer the Kansas Action, which was appended as Ex. E to Moving Defendants' initial Memorandum. More importantly, Plaintiffs' venue argument fails to address the venue provision under ERISA which undeniably establishes that venue is proper where the Fund is located and the Plan is administered. The venue provision in ERISA should prevail for three reasons. First, ERISA's venue provision is specifically directed to claims involving employee benefit plans while the FDCPA is generally applicable to legal actions to collect on a debt. The specific ERISA application should control.[8] Second, the Steeles' interpretation of the FDCPA's venue provision would lead to the dubious result that this statute implicitly overruled ERISA's venue provision.[9] Third, the purpose of ERISA's venue provision would be completely undermined if an employee benefit plan could only

---

any additional case law directly on point.

[8] *Children's Hosp. of Philadelphia v. Tricorp Enter., Ltd.*, 2006 WL 3229940, at *1 (E.D. Pa. 2006) ("In actions brought under ERISA, the specific venue provision of ERISA rather than the general venue statute governs the proper venue of a claim."); *Camp v. Guercio*, 464 F. Supp. 343, 345 (W.D. Pa. 1979) (explaining in cases implicating competing federal venue statute "the narrowly drawn, specific venue provision ... must prevail over the broader, more generally applicable venue provision ....").

[9] *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662-663 (2007): "While a later enacted statute ... can sometimes operate to amend or even repeal an earlier statutory provision ..., repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest. We will not infer a statutory repeal unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary ... in order that the words of the later statute shall have any meaning at all."

bring a reimbursement claim within the available jurisdictions under the FDCPA.[10] Therefore, Defendants properly filed the Fund's reimbursement claim under ERISA in Kansas because the Plan is administered in that state.

Plaintiffs' claim that the Steeles and Feldman Shepard are unquestionably not subject to personal jurisdiction in the ERISA claim in Kansas is also without merit -- for three distinct reasons. First, while the Steeles and Feldman Shepard filed a motion to dismiss the Kansas Action for lack of personal jurisdiction, the Court has yet to substantively rule on this motion. Second, a "[c]ourt's exercise of personal jurisdiction in an ERISA matter is not constrained by the minimum contacts standard…." *Trustees of Nat. Elevator Indus. Pension v. Ramchandani*, 1999 WL 179748, at *1 (E.D. Pa. 1999). Third, even assuming the minimum contacts threshold is required, the Steeles and Feldman Shepard both should be subject to jurisdiction in Kansas based on their continuing conduct specifically directed toward the Fund in Kansas. Accordingly, it is clear Kansas is a proper venue for the Fund's reimbursement claim, and that the Steeles, along with Feldman Shepard, are subject to personal jurisdiction in that state.

### B. Defendants' request to transfer under the first filed rule should be granted because the issues in the Kansas Action and Pennsylvania Action are the same.

The Steeles attempt to avoid transfer of the case to Kansas under the first filed rule by arguing that the Kansas Action and Pennsylvania Action do not involve the same issues. This hypocritical statement defies not only common sense but also the Steeles' own assertions in their

---

[10] In *Keating v. Whitmore Mfg. Co.*, 981 F. Supp. 890, 892 (E.D. Pa. 1997), the court explained the underlying purpose of ERISA's venue provision as follows: "The remedies available under ERISA are responsive to the policy of ready access to Federal Courts. Indeed, a potential ERISA plaintiff is granted a wide choice of Federal court venue. Thus, the issue of venue must be approached with the broad Congressional policy favoring free access to federal courts in mind." (Internal citations omitted.)

pending Motion to Transfer the Kansas Action where they state that these are "two actions *involving precisely the same issues.*" Steeles' Motion to Transfer, ¶ 27, p. 6, and supporting Memorandum, p. 7, both part of Ex. E to Moving Defendants' initial Memorandum (emphasis added).[11] The ultimate issue in both cases is whether the Fund has a right to reimbursement from the Steeles under the terms of the Plan. Accordingly, the threshold requirement of the first filed rule is satisfied because the Pennsylvania Action was filed after the Kansas Action and the dispositive issue in both cases is the Fund's reimbursement rights.[12]

*Oral argument is requested at the court's discretion.*

Respectfully submitted,

MARGOLIS EDELSTEIN

By:   *s/ JK724*
     JAMES R. KAHN, ESQUIRE
     I.D. no. 29127
     jkahn@margolisedelstein.com

The Curtis Center, Suite 400 E
170 S. Independence Mall West
Philadelphia, PA 11119106-3337
Tel: (215) 922-1100

Attorneys for Defendants Blake & Uhlig, P.A. and Lauren Fletcher

---

[11] *See also* the Steeles' Motion at ¶ 26, p. 6, and supporting Memorandum, pp. 10-11: "The action filed by the Steeles against the Boilermakers in . . . Pennsylvania . . . arises from the same set of facts and seeks a declaratory judgment on precisely the same issues raised by Boilermakers in the instant action."

[12] The Steeles also brazenly claim that Defendants failed to explain to the Court that the Kansas Action and Pennsylvania Action were filed within one week of each other. This is patently incorrect as Defendants' Memorandum of Law, at p. 3, specifically states that the Complaint in the Kansas Action was filed on June 18, 2009, and the Steeles' Complaint in the Pennsylvania Action was filed on June 24, 2009.