IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY STEELE and JUDITH STEELE | : : : : | |
| Plaintiffs, | : : | Civil Action No. 09-2837 |
| vs. | : : | |
| BLAKE & UHLIG, P.A., LAUREN FLETCHER; and BOILERMAKERS NATIONAL HEALTH AND WELFARE FUND. | : : : : : : | |
| Defendants. | : : | |

**DEFENDANT BOILERMAKERS NATIONAL HEALTH & WELFARE FUND'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

Our principal brief adequately responds to most of the points raised by Plaintiffs in their Response. We respectfully submit this Reply to refute two additional issues suggested in their Response – the denial of intervention in the Common Pleas action has absolutely no preclusive effect here; and claims seeking to recover for other tort or statutory remedies contained in non-ERISA statutes which go to a Benefit Plan's *attempt to enforce its subrogation interest* impermissibly interfere with the Plan's exercise of its rights under federal law and are thus *precisely* the type of claims ERISA preempts.

**A.   State Law Interference With Attempts to Seek Reimbursement of Benefits Paid Out By an ERISA-Covered Plan is Preempted**

Plaintiffs' argument rather baldly disregards a number of basic things. First, despite their assertion that Section 502 claims "are primarily reserved for 'participants' and 'beneficiaries,'" the text of Section 502(a)(3) actually provides that a civil action may be brought "by a participant,

beneficiary, **or fiduciary** (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this title or **terms of the plan**. . ." 29 U.S.C. § 1132(a)(3) (emphasis added). Plaintiffs totally ignore established Third Circuit law we have previously discussed confirming that the defensive claim that a Fund's right to reimbursement is extinguished by state law is itself a "claim for benefits due" under Section 502 giving rise to federal jurisdiction. *See, e.g., Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 308 (3rd Cir. 2006) (claim that ERISA plan "wrongfully sought reimbursement of previously paid health benefits" from a plan beneficiary places the "benefits . . . under something of a cloud" and states a claim for "benefits due" under Section 502(a) of ERISA); *Levine v. United Healthcare Corp.*, 402 F.3d 156, 162-63 (3rd Cir. 2005) ("the essence of the claim concerns an ERISA plan" and "[w]here, as here, plaintiffs claim that their ERISA plan wrongfully sought reimbursement of previously paid health benefits, the claim is for 'benefits due' and federal jurisdiction under section 502(a) of ERISA is appropriate"). *See also Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006) (Fund's action seeking reimbursement from Plan beneficiary to recover benefits paid is arises under and is governed by ERISA § 502(a)(3)). Plaintiffs' simplistic assertion in their brief that the law we have cited is inapplicable merely because those cases "relate to circumstances where benefits were denied," Plaintiffs' Memo of Law at 3, is quite irreconcilable with the thinking of the Supreme Court and Courts of Appeals on these very issues.

      The efforts by the Fund to obtain reimbursement culminated in its Trustees' suit in Kansas to enforce the terms of the plan relating to the Fund's right of subrogation and reimbursement. In the lawsuit in the Eastern District of Pennsylvania, the Plaintiffs claim that the Fund's attempt to

enforce its subrogation and reimbursement rights, as provided for under ERISA, violates the Pennsylvania UTPCPL and the FCEUA. While Plaintiffs assert that their action has no relation to ERISA;[1] however, it is clear that a benefits dispute about subrogation and reimbursement rights, governed by ERISA, forms the fundamental basis of the Pennsylvania and Kansas Actions.

When it serves their particular purpose, Plaintiffs seemingly will not hesitate to espouse contradictory positions before this Court and the Kansas Court regarding the applicability of ERISA and the Fund's rights of subrogation and reimbursement. As explained in the *Reply Memorandum in Support of Motion of Defendants Blake & Uhlig, P.A. and Lauren Fletcher to Dismiss Plaintiffs' Complaint or, in the Alternative, to Transfer*, in the Steeles' pending Motion to Transfer the Kansas Action, the Steeles state "that these are 'two actions *involving precisely the same issues.*'" (Doc 23, p. 6-7) (emphasis supplied). Plaintiffs' logic appears to be as follows: in Kansas, the Pennsylvania and Kansas Actions involve identical issues relating to the Fund's rights of reimbursement and subrogation under ERISA; in Pennsylvania, the Pennsylvania and Kansas Actions do not involve identical issues. Such hypocrisy underscores that this lawsuit – erecting state law barriers to the Fund's seeking to recover reimbursement – should properly be dismissed.

**B.     The Common Pleas Action Has Absolutely No Preclusive Effect Here**

Plaintiffs continue to misrepresent the nature of the Health & Welfare Fund's involvement in *Steele v. Alemo*, the case malpractice case litigated in the Philadelphia Court of Common Pleas. Plaintiffs' brief argues that "Boilermakers has had a full and fair opportunity to assert its purported subrogation rights when Plaintiffs' medical malpractice lawsuit was being litigated" and that the

---

[1]     Plaintiffs have also stated that the Fund has failed "to provide any explanation as to how statutory bad faith claims . . . have any nexus to claims brought for violations of fair debt collection statutes." (Doc. 26, p. 4). It is unclear what the Plaintiffs are arguing with this statement.

Fund "lost." (Doc. 26, p. 4.) Plaintiffs' assertion is patently false; it ignores that the Common Pleas Court made no finding whatsoever on this point, and it fails to point out that no preclusive effect in any event can attach to a lawsuit which did not result in any final judgment, but which the parties (which did *not* include the Fund) settled.

As explained in the *Memorandum of Law in Support of Motion of Defendants Blake & Uhlig P.A. and Lauren M. Fletcher to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief Can Be Granted or, in the Alternative, to Transfer the Case*, the Court of Common Pleas Judge simply signed an order denying the Fund's petition to intervene – thus denying the Fund any opportunity, fair or otherwise, to litigate its subrogation and reimbursement rights. (Doc. 8, Exhibit G). Rule 2327 of the Pennsylvania Rules of Civil Procedure, which governs intervention, lists four reasons justifying a third party's being permitted to intervene in an existing law suit. The defendants in the Common Pleas case, joined by the Steeles, argued, in addition to MCARE's alleged extinguishment of the Fund's reimbursement right, that "the allowance of intervention will delay the progress of this matter including any settlement discussions," and that the Fund's participation was not required because "its rights, if any, do not accrue until after it is determined what portion of any judgment or settlement is attributable to medical expenses, if any." Nazareth Hospital's Answer to Petition for Intervention ¶ 11. Such an assertion is consistent with the hornbook principle of Pennsylvania law which does not *require* a third party to seek intervention in an existing law suit, and courts have discretion to deny petitions to intervene in Common Pleas actions for any number of reasons. *See e.g., Twp. of Radnor v. Radnor Recreational, LLC*, 859 A.2d 1, 5 (Pa. Commw. Ct. 2004); *Larock v. Sugarloaf Twp.. Zoning Hearing Bd.*, 740 A.2d 308, 313-14 (Pa. Commw. Ct. 1999). The court's summary order articulated no basis for its denial of the Fund's

petition to intervene; at no time did the Court of Common Pleas issue a substantive opinion that addressed whether ERISA preempted the MCARE Act or the Fund's rights of subrogation and reimbursement. The point asserted by Plaintiffs here – that the Court of Common Pleas ruled on the preemption issue – is simply not borne out by anything in the record.[2]

Since the issues of the Fund's subrogation and reimbursement rights and ERISA preemption were not litigated in the medical malpractice suit, the Fund is not precluded from enforcing its rights of subrogation and reimbursement. Collateral estoppel "acts to foreclose relitigation in a subsequent action of an issue of fact or law that was actually litigated and was necessary to a prior final judgment." *PMA Insurance Group v. Workmen's Compensation Appeal Board*, 665 A2d 538, 541 (Pa. Commw. Ct. 1995) (denial of insurance company's request to intervene in earlier action, in which it sought to enforce its right to subrogation of medical benefits paid out in workers compensation action, has no preclusive effect in later action brought by insurance company to enforce its subrogation right to beneficiary's settlement proceeds), *app. den.*, 544 Pa. 668, 674 A.2d 1078 (1996). Collateral estoppel bars the relitigation of an issue in a later proceeding only if

> (1) the legal or factual issues are identical; (2) they were actually litigated, (3) they were essential to the judgment; (4) and they were material to the adjudication.

*Id.*

---

[2] Plaintiffs do not precisely argue that it is claim or issue preclusion that they are raising, but they clearly are inviting this Court to rule that the earlier action precludes this one in some way. Preclusion is an affirmative defense under the Federal Rules, and the party raising the defense clearly has the burden of proving every element of the defense. Because the plaintiffs cannot show that the Common Pleas Court actually ruled on this issue, and because there was never a final judgment in that action because the parties settled it, after the Fund was denied intervention, the Plaintiffs have failed to meet their burden of establishing whatever affirmative defense they are seeking to assert.

"A prerequisite to the application of collateral estoppel is that the prior decision asserted to have a preclusive effect must be a final judgment." *Id.* There was no final judgment here, or any ruling, dispositive or otherwise, on the issue of ERISA preemption of MCARE. The earlier action has no preclusive effect here. As the Commonwealth Court stated in *PMA*, "[t]o hold otherwise would give Claimant a windfall by permitting her a double recovery for the [injury], and would defeat the purpose of subrogation solely because Claimant received monies from a compromise settlement rather than a verdict." *PMA*, 665 A.2d at 543. *See also, e.g., Thompson v. WCAB*, 566 Pa. 420, 781 A.2d 1146, 1155 (2001) (recognizing "the potential for abuse that exists in this area, as settlement agreements might fraudulently be structured merely to defeat a valid subrogation interest"); Kidd-Parker v. WCAB, 907 A.2d 33, 41 (Pa. Cmwlth. 2006) (cautioning against allowing "windfall" by a claimant who can retain benefits paid by her employer as well as "the settlement she received from the tortfeasor").

Collateral estoppel or res judicata clearly do not apply to the present circumstances. As explained above, the Fund's subrogation and reimbursement rights and ERISA preemption were not ever ruled on in the medical malpractice suit. The Fund was never a party to the medical malpractice suit. The medical malpractice action ultimately settled and the Fund was not a party to such settlement.[3] Under Pennsylvania law, a settlement is not a final judgment which confers preclusive effect of any rulings made on one not made a party to the earlier action. See Sale v. Ambler, 355 Pa. 165, 6 A.2d 519, 520-21 (1939) (a "discontinuance itself is not a bar to a subsequent suit" and has no res judicata effect on parties not brought into the case). Plaintiffs' continued claims that the Court

---

[3]   Plaintiffs have refused to provide the Fund with the settlement reached in the medical malpractice suit and did not provide the Fund with the opportunity to settle its subrogation and reimbursement right in the Court of Common Pleas.

of Common Pleas has resolved the issue of the Fund's subrogation and reimbursement rights is at best disingenuous, and should be disregarded.

## II. CONCLUSION

Disingenuousness – or perhaps simply a head-in-the-sand attitude – pervades Plaintiffs' position with regard to the viability of their lawsuit. The benefits for which reimbursement is sought were paid out under a system governed by federal law; so too does federal law determine whether those benefits are properly reimbursable. Seeking damages under state law against a Fund's attempts to obtain such reimbursement necessarily presupposes that the Fund has no right to claim reimbursement because its reimbursement agreement the Plaintiffs voluntarily entered into is unenforceable under MCARE, and *that* presupposition necessarily calls into play whether ERISA itself preempts MCARE, the state law Plaintiffs exclusively invoke as their defense to repayment. As the Fund's actions which Plaintiffs object to can only begin to be deemed "unreasonable" *if* ERISA does *not* preempt MCARE, this Court cannot escape determining the preemptive effect ERISA actually *does* exert over MCARE in order to decide this case. For Plaintiffs to continue to assert that ERISA nonetheless somehow plays no role in this case, and that ERISA preemption is irrelevant to the Court's analysis, fundamentally misapprehends (if not deliberately misstates) the scope of federal preemption. For all of the reasons set forth in Defendants' filings in support of their Motions to Dismiss, this Court should grant the Fund's Motion to Dismiss.

**Respectfully Submitted,**

**SPEAR WILDERMAN P.C.**
**BY:** SLS2217
    **BENJAMIN EISNER**
    **SAMUEL L. SPEAR, ESQUIRE**
    230 South Broad Street, 14th Floor
Date: November 13, 2009    Philadelphia, PA 19102
    (215) 732-0101